**Nathaniel J. OLIVO & Lola J. Hopcraft, individually and on behalf of all similarly situated persons, Plaintiffs,**

v.

**GMAC MORTGAGE CORPORATION, Defendant.**

**No. 03–72585.**

United States District Court, E.D. Michigan, Southern Division.

April 1, 2004.

Dale E. Bock, Flint, MI, Valdemar L. Washington, Detroit, MI, for Plaintiffs.

Dennis M. Barnes, Eugene Driker, Matthew R. Millikin, Barris, Sott, Detroit, MI, Joseph N. Frabizzio, Michael L. Banks, Sarah E. Bouchard, Morgan, Lewis, Philadelphia, PA, for Defendant.

## *OPINION AND ORDER*

ZATKOFF, Chief Judge.

### I. INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Court Facilitation of Notice to Potential Plaintiffs. Defendant GMAC Mortgage Corporation has responded. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Plaintiffs' Motion is DENIED.

### II. BACKGROUND

This is an action for overtime compensation brought pursuant to the Fair Labor Standards Act of 1938, *as amended,* 29 U.S.C. §§ 201–219, (hereinafter "FLSA"). Plaintiffs are Nathaniel J. Olivo and Lola

J. Hoperaft, former retail loan officers with Defendant GMAC Mortgage Corporation, (hereinafter "GMAC"). Although GMAC employs loan officers in all fifty states, both Plaintiffs worked out of GMAC's office in Flint, Michigan, where Plaintiff Olivo worked from approximately July 10, 2000, until July 17, 2002, and Plaintiff Hopcraft worked from approximately February 25, 2002, until May 13, 2003.

Plaintiffs' responsibilities as loan officers were to originate residential real estate, mortgage, and home equity loans for GMAC. The terms and conditions of Plaintiffs' employment were set forth in Residential Loan Originator Employment and Compensation Agreements executed by Plaintiffs, (hereinafter "Employment and Compensation Agreement"). *See* Plaintiffs' Motion Ex. 9 & 10. GMAC loan officers are paid on a pure commission basis pursuant to schedules set forth in the loan officer's Employment and Compensation Agreements. Under this commission-based pay structure, a loan officer's compensation is based on his or her actual production, measured by the value of that loan officer's mortgage loan closings. In order to provide compensation to beginning loan officers while they are still developing contacts and while GMAC is processing submitted loan applications, (*i.e.,* while the loan officer's first loans are "in the pipeline"), however, GMAC pays loan officers on a salaried basis during the first three months of the loan officer's employment.

On July 3, 2003, Plaintiffs filed the instant Complaint. With their Complaint, Plaintiffs allege that while employed by Defendant, they routinely worked in excess of forty hours a week, but that Defendant failed to pay Plaintiffs, (and all other similarly situated GMAC loan officers), time and one-half their regular rates of pay for those hours worked in excess of forty hours a week. Plaintiffs allege that this practice violates 29 U.S.C. §§ 207(a) & 215(a). In essence, Plaintiffs allege that Defendant's failure to pay overtime pay to those loan officers that work in excess of forty hours a week violates the Fair Labor Standards Act. In addition, Plaintiffs seek to proceed as a collective action, and to have all similarly situated GMAC loan officers added as plaintiffs pursuant to the "opt in" provision of the FLSA. *See* 29 U.S.C. § 216(b).

On October 29, 2003, this Court held a Scheduling Conference. At that time, the Court indicated that it would provide an initial period of time whereby the parties would conduct discovery as to whether this action should proceed as a "collective action" pursuant to 29 U.S.C. § 216(b). Following this initial period of discovery, Plaintiffs would submit a motion based upon whether they sought to proceed as a "collective action," and based upon whether they sought Court facilitation of notice of the action to "similarly situated" putative plaintiffs. On January 5, 2004, Plaintiffs filed their Motion for Court Facilitation of Notice to Potential Plaintiffs, and on February 4, 2004, Defendant filed a response opposing Plaintiffs' Motion.

With their Motion, Plaintiffs ask that the Court (1) grant their request to proceed as a collective action pursuant to 29 U.S.C. § 216(b); (2) grant their request for Court facilitation of notice to the putative class of plaintiffs; (3) order the Defendant to produce an alphabetized list of present and former loan officers employed by Defendant since February 1, 2001; and (4) approve Plaintiffs' proposed Notice to Potential Plaintiffs and Consent to Join. Defendant opposes Plaintiffs' Motion in its entirety.

## III. DISCUSSION

With their Complaint, Plaintiffs allege that Defendant has a policy of not paying

its residential mortgage loan officers for work performed in excess of forty hours a week in violation of 29 U.S.C. §§ 207(a) and 215(a). With their Motion, Plaintiffs seek the Court's approval to proceed as a collective action pursuant to 29 U.S.C. § 216(b), and request that the Court facilitate the notification of the pendency of this action to the putative "class" plaintiffs. Section 216(b) of the FLSA authorizes collective actions in certain circumstances and provides as follows:

§ 216. Penalties

.    .    .    .    .

(b) Damages; right of action; attorney's fees and costs; termination of right of action, ... An action to recover [for violations of 29 U.S.C. §§ 206, 207 or 215(a)(3) ] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*See* 29 U.S.C. § 216(b).

Pursuant to § 216(b), Plaintiffs may maintain a collective action on behalf of themselves "and other employees similarly situated[,]" but for any "similarly situated" employee to be bound by a judgment, they must have filed a written consent with this Court. *See* § 216(b); *Sims v. Parke Davis & Co.,* 334 F.Supp. 774, 780–81 (E.D.Mich.1971), *aff'd,* 453 F.2d 1259 (6th Cir.1971). In other words, a collective action under § 216(b) is a representative action, but in order for the named Plaintiffs to represent the interests of "similarly situated" employees, the "similarly situated" employees must "opt in" to the proceed-

ings. *See Clougherty v. James Vernor Co.,* 187 F.2d 288, 290 (6th Cir.1951) ("[U]under the Fair Labor Standards Act the plaintiff has no right without specific authorization to represent an employee not joined as a plaintiff."). If the Court authorizes a "collective action" under § 216(b), then in its discretion, this Court may authorize the notification of putative "class" members of the pendency of the collective action. *See Hoffmann–La Roche v. Sperling,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); *Woods v. New York Life Ins. Co.,* 686 F.2d 578, 580 (7th Cir.1982) ("[Section 216(b) ] authorizes a representative action; and this authorization surely must carry with it a right in the representative plaintiff to notify the people he would like to represent that he has brought a suit, and a power in the district court to place appropriate conditions on the exercise of that right."). The issues before the Court are whether it should authorize a § 216(b) action in this case, and if so, whether it should exercise its discretion and facilitate notice to putative "class" plaintiffs.

In order to proceed as a "collective action" pursuant to § 216(b), Plaintiffs must demonstrate that they are "similarly situated" to the employees they seek to notify of this suit. In order to determine whether the Plaintiff has made this showing, the Court adopts the "two-stage class certification method." *See Lusardi v. Xerox Corp.,* 118 F.R.D. 351 (D.N.J.1987). *See also Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208 (11th Cir.2001) ("The two-tiered approach to certification of § 216(b) opt-in classes ... appears to be an effective tool ... and we suggest that district courts in this circuit adopt it in future cases."). *See generally Mooney v. Aramco Services Co.,* 54 F.3d 1207 (5th Cir.1995) (discussing two different approaches to § 216(b) "certification.").

Under the first step of the two-stage method, the Court determines whether

Plaintiffs have demonstrated other "similarly situated" putative plaintiffs for "notice" purposes. With this step, "[a] named plaintiff can show that the potential claimants are similarly situated 'by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Flores v. Lifeway Foods, Inc.*, 289 F.Supp.2d 1042, 1045 (N.D.Ill.2003). *See Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F.Supp.2d 101, 104 (S.D.N.Y.2003); *Roebuck v. Hudson Valley Farms*, 239 F.Supp.2d 234, 238 (N.D.N.Y.2002) (citing *Realite v. Ark Restaurants Corp.*, 7 F.Supp.2d 303, 306 (S.D.N.Y.1998)); *Kane v. Gage Merch. Servs.*, 138 F.Supp.2d 212, 215 (D.Mass. 2001) (quoting *Hoffmann v. Sbarro, Inc.* 982 F.Supp. 249, 261 (S.D.N.Y.1997)); *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 364 (M.D.Ala.1999).[1] This initial standard is fairly lenient, and in order to meet this standard, Plaintiffs must simply "submit evidence establishing at least a color-able basis for their claim that a class of 'similarly situated' plaintiffs exists." *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266 (D.Minn.1991). Courts requiring a factual showing under the first step of a *Lusardi*-type determination have considered "factors such as whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; ... whether evidence of a widespread discriminatory plan was submitted[,]" *H. & R. Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D.Tex.1999), and whether "[a]s a matter of sound case management, ... a manageable class exists." *See Severtson*, 137 F.R.D. at 266. If Plaintiffs are able to make this showing, the Court will authorize Plaintiffs to proceed with this action as a "collective action" and will allow Plaintiffs to notify putative class members of the pendency of this suit. This initial authorization has been called a "conditional certification" a certification conditioned upon Plaintiffs being able to satisfy the second step of the two-stage approach.[2] *See Mooney*, 54 F.3d at 1214.

1. The Court notes that it has afforded Plaintiffs a period of discovery solely on the issue of whether or not this action should proceed as a collective action pursuant to 29 U.S.C. § 216(b). Accordingly, the Court requires Plaintiffs to demonstrate "modest" factual support for the class allegations in Plaintiffs' Complaint, rather than allow Plaintiffs to simply rely upon the allegations contained in their Complaint. Under the distinction set forth in *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591 (S.D.Ohio 2002), the Court is applying the "more restrictive standard."

2. Although not necessary in this case, under the second step, following the close of discovery, Defendant would have had the opportunity to file a Motion challenging the initial determination to allow the case to proceed as a "collective action," and the Court would have applied a stricter standard to determine whether the putative class of plaintiffs were "similarly situated" to the named Plaintiffs. *See, e.g., Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D.Colo.1997) ("In determining whether plaintiffs are similarly situated after discovery is completed, courts address several factors: (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations ...."). In addition, at this stage, the Court would have considered whether certification would serve the purposes of a collective action under § 216(b), *see Vaszlavik*, 175 F.R.D. at 678 (quoting *Hoffmann–La Roche*, 493 U.S. at 170, 110 S.Ct. 482) ("A collective action allows ... plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issue of law and fact arising from the same alleged ... activity."), and then weigh the benefits of a collective action against the prejudice to the defendant and any judicial inefficiencies that could result from allowing Plaintiffs to proceed collectively. *See Vaszlavik*, 175 F.R.D. at 678. In this case, however, the Court has denied Plaintiffs' initial request for authorization to proceed collectively.

In the present case, Plaintiffs claim to be "similarly situated" to, and seek to notify those persons employed by Defendant on or after February 1, 2001, in the United States as Retail Loan Officers and/or in comparable positions. *See* Plaintiffs' Br. 1. In order to support their claim that they and the potential plaintiffs were victims of a common policy in violation of the law, Plaintiffs claim that the hiring, training, and general supervision of GMAC loan officers is highly centralized and uniform throughout the United States, and rely significantly on the deposition testimony of Alfred Davis, a Regional Manager for the Retail Lending Division for GMAC, to demonstrate the similarities between GMAC loan officers. Plaintiffs have not submitted any affidavits of other potential plaintiffs, but argue that based upon the deposition testimony of Mr. Davis, they have made the requisite showing and have demonstrated that GMAC loan officers throughout the country are "similarly situated," especially since GMAC concedes that no GMAC loan officer receives overtime compensation.

Defendant opposes Plaintiffs' Motion, and present three arguments in opposition. First, Defendant argues that Plaintiffs are not similarly situated to other GMAC loan officers, and that Plaintiffs do not meet the "similarly situated" requirement of § 216(b). Second, Defendant argues that under the standard used by the Court, Plaintiffs should not be allowed to proceed as a collective action since they are unable to make a "modest factual showing" that a policy of the Defendant's violated the law. Specifically, Defendant argues that it is exempt from complying with the overtime compensation requirement of § 207(a)(1) because its loan officers are "outside salesmen" within the meaning of § 213(a)(1). And third, Defendant argues that the proposed class is unmanageable. Specifically, since Defendant primarily relies upon the "outside salesman" exemption, the Court must make a fact intensive inquiry to determine whether each and every potential plaintiff falls within that exemption. Depending upon the number of loan officers that elect to opt in to the proceedings, such a determination would be incredibly time consuming, and, as a matter of sound case management, would weigh against a finding that a manageable class exists.

For the reasons set forth below, the Court concludes that Plaintiffs have not met their burden, and that Plaintiffs' factual showing has failed to demonstrate that the Defendant's failure to pay overtime violates 29 U.S.C. §§ 207(a) or 215(a), even under the lenient standard applied by the Court.

Defendant claims that its loan officers, including Plaintiffs, are exempt from the FLSA's overtime requirement under the outside salesman exemption described in 29 U.S.C. § 213(a)(1). Section 213(a)(1) provides that the overtime requirement of § 207(a) does not apply to "any employee employed ... in the capacity of outside salesman ...." 29 U.S.C. § 213(a)(1). The Code of Federal Regulations provides that the term "outside salesman" means any employee

(a) Who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business in:

(1) Making sales within the meaning [29 U.S.C. § 203(k) ], or

(2) Obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

(b) Whose hours of work of a nature other than that described in paragraph (a)(1) or (2) of this section do not exceed 20 percent of the hours worked in the workweek by nonexempt employees of the employer: Provided, That work performed incidental to and in conjunction

with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall not be regarded as nonexempt work.

29 C.F.R. § 541.5. In simple terms, in order to qualify for the outside salesman exemption, an employee must spend a significant amount of his or her work-time engaging in sales related activities away from his or her employer's place of business. *See* 26 A.L.R. Fed. 941 § 2a (1976). The outside sales exemption derives from the incompatibility of the overtime requirements of the FLSA with the individual character of an outside salesman. *See, e.g., Jewel Tea Co. v. Williams,* 118 F.2d 202, 208 (10th Cir.1941) ("To apply hourly standards primarily devised for an employee on a fixed hourly wage is incompatible with the individual character of the work of an outside salesman."). In this Circuit, FLSA exemptions are narrowly construed, and an employer attempting to rely upon an exemption must demonstrate that it applies by "plain and affirmative evidence." *See Ale v. TVA,* 269 F.3d 680, 691 n. 4 (6th Cir.2001). *See also Wirtz v. Atlanta Life Ins. Co.,* 311 F.2d 646, 648 (6th Cir.1963); *Hodgson v. Klages Coal & Ice Co.,* 435 F.2d 377, 382 (6th Cir.1970).

Courts have considered several factors when determining whether an employee is an outside salesman. Courts have considered whether the employee: (1) must solicit new business; (2) receives sales training; (3) was hired and denominated as a salesman; (4) was paid on a commission basis; (5) was required to meet minimum production standards; and (6) was subject to direct or constant supervision. *See Hodgson v. Krispy Kreme Doughnut Co.,* 346 F.Supp. 1102 (D.N.C.1972); *Fields v. AOL Time Warner, Inc.,* 261 F.Supp.2d 971, 974 (W.D.Tenn.2003).

In the present case, there is no question that GMAC loan officers are primarily engaged in sales. At the time they execute their Employment and Compensation Agreement, GMAC loan officers are made aware (1) that they are joining a "sales force," *see, e.g.,* Olivo Employment and Compensation Agreement Ex. C; Plaintiffs' Motion Ex. 9; (2) that they are paid commission solely based upon their individual production, *see, e.g.,* Olivo Employment and Compensation Agreement Ex. A; Plaintiffs' Motion Ex. 9; and (3) that from time to time they may be able to participate in a sales incentive program sponsored by their employer. *See, e.g.,* Olivo Employment and Compensation Agreement ¶ 4; Plaintiffs' Motion Ex. 9. Furthermore, as a loan originator, it is a GMAC loan officer's job to solicit new business, although loan officers have a considerable amount of flexibility to configure their workday. Accordingly, the Court finds that GMAC loan officers are primarily engaged in sales. The only issue is whether GMAC loan officers are regularly engaged in "outside" sales, as opposed to "inside" sales, as required by 29 C.F.R. § 541.5. *See also* 29 C.F.R. § 541.502.

Defendant argues that its loan officers meet the "outside" sales requirement because its loan officers work primarily outside of the office to solicit prospective borrowers and referral services. *See* Defendant's Response Br. p. 1. *See also* Levine Decl. ¶ 8; Defendant's Motion Ex. B ("GMAC[ ] expects its Loan Officers to spend most of their work time outside of the office generating sales and making new sales contacts."). Defendant indicates that it relies upon its loan officers to " 'sell' by contacting prospects, making and maintaining contacts with referral sources ... and using their ... talents and skills to create new sales opportunities." *See* Levine Decl. ¶ 3; Defendant's Motion Ex. B. For additional support, Defendant has submitted the Declarations of several loan officers, which indicate that GMAC loan officers spend a substantial

percentage of time outside of the office soliciting sales and generating or maintaining contacts, and that much of the time spent at the office is devoted to following up on contacts and leads generated during outside sales visits. *See* Chaisson Decl. ¶¶ 6 & 11; Defendant's Motion Ex. C; Luckstead Decl. ¶ 4; Defendant's Motion Ex. D; Curtis Decl. ¶¶ 4–6; Defendant's Motion Ex. E; Shamo–Richardville Decl. ¶¶ 6 & 10; Defendant's Motion Ex. F. Based upon the foregoing, the Court finds that Defendant has met its burden and demonstrated that, generally, its loan officers primarily engage in sales, that a substantial percentage of the loan officers' time is devoted to generating sales outside of the office, and that a substantial percentage of any time spent at the office is "incidental to and in conjunction with" the loan officers' outside sales efforts. *See* 29 C.F.R. §§ 541.5, 541.502, and 541.503.

Since the Court finds that, generally, the outside sales exemption contained in 29 U.S.C. § 213(a)(1) applies to Defendant's loan officers, the Court concludes that Plaintiffs are unable to demonstrate that they, and the potential plaintiffs, were "victims of a common policy or plan that violated the law," and, therefore, that Plaintiffs have filed to demonstrate that they are "similarly situated" to other GMAC loan officers within the meaning of 29 U.S.C. § 216(b). *Flores,* 289 F.Supp.2d at 1045. In essence, Defendant has demonstrated that the overtime requirements of the FLSA are incompatible with the individual character of the work of its loan officers. *See Jewel Tea,* 118 F.2d at 208. Plaintiffs' Motion should be DENIED.

## IV. CONCLUSION

Accordingly, and as set forth above, IT IS HEREBY ORDERED that Plaintiffs Olivo and Hopcraft's Motion for Court Fa-

cilitation of Notice to Potential Plaintiffs is DENIED in its entirety.

IT IS SO ORDERED.