Samantha HARRISON, Plaintiff,

v.

MCDONALD'S CORP., Defendant.

No. 2:04–CV–563.

United States District Court,
S.D. Ohio, Eastern Division.

Sept. 2, 2005.

John William Ferron, Leslie Blair Graden, Lisa A. Wafer, Ferron & Associates, Columbus, OH, for Plaintiff.

Matthew W. Lampe, Tonya B. Braun, Edward Michael Rossman, Jones Day, Columbus, OH, for Defendant.

## MEMORANDUM OPINION & ORDER

HOLSCHUH, District Judge.

This matter is currently before the Court on two pending motions: (1) Plaintiff's motion for authority to notify putative plaintiffs of the pendency of this action and their right to "opt-in" pursuant to 29 U.S.C. § 216(b); and (2) Defendant's motion to strike portions of the affidavits of Samantha Harrison and Eric Hamilton, submitted in support of Plaintiff's motion. (Record at 29, 33). For the reasons stated below, the Court grants in part and denies in part Defendant's motion to strike, and denies Plaintiff's motion for authority to notify putative plaintiffs of the pendency of this action and their right to "opt-in."

## I. Background and Relevant Law

Gary Harrison filed this action on behalf of his minor daughter, Samantha Harrison, alleging that the McDonald's restaurant ("the Restaurant") located at 3750 South Hamilton Road in Groveport, Ohio violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 101, *et seq.*, and Ohio Revised Code § 4113.15(B) by failing to pay Samantha all of the regular and overtime wages to which she was entitled. He also asserted claims of breach of contract and promissory estoppel. Plaintiff contends that Restaurant managers manually altered Samantha's time records in order to avoid paying her for all of the hours she actually worked. After Samantha turned eighteen, she was substituted as the named plaintiff.

Pursuant to 29 U.S.C. § 216(b), Plaintiff seeks to bring her FLSA claim on behalf of herself and a class of similarly-situated employees. That statute provides in pertinent part:

> Action to recover the liability prescribed ... may be maintained in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

Courts have generally adopted a two-tiered certification approach for deciding whether a suit can proceed as a collective action. First, the court must deter-

mine whether notice of the pending action and the opportunity to "opt-in" should be given to potential class members. Such notice will usually be authorized if the plaintiff demonstrates that she is "similarly situated" to the other employees she seeks to notify of the pendency of the action. This is known as "conditional certification" of the collective action. After notice has been sent and discovery has been completed, the defendant can file a motion for decertification, challenging the court's preliminary determination that other employees are similarly situated. *See Olivo v. GMAC Mortgage Corp.*, 374 F.Supp.2d 545, 547–48, n. 2 (E.D.Mich. 2004); *Mike v. Safeco Ins. Co.*, 274 F.Supp.2d 216, 219–20 (D.Conn.2003).

With respect to the conditional certification stage, not all courts have agreed on what the plaintiff must do to demonstrate that other employees are similarly situated, but most courts agree that the standard is fairly lenient. Many courts have held that "a modest factual showing" is all that is required before a court authorizes notice to be sent to potential plaintiffs. *Olivo*, 374 F.Supp.2d at 548 (*quoting Flores v. Lifeway Foods, Inc.*, 289 F.Supp.2d 1042, 1045 (N.D.Ill.2003)). A few courts, however, have held that this burden may be satisfied based solely on allegations in a complaint. *See Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595 (S.D.Ohio 2002)(citing cases). The Sixth Circuit has not yet decided which standard applies.

Plaintiff has filed a motion for authority to notify putative plaintiffs of the pendency of this collective action and their right to "opt-in" pursuant to 29 U.S.C. § 216(b). In order to demonstrate that these putative plaintiffs are similarly situated, Plaintiff has attached to that motion her own affidavit and an affidavit of former co-employee Eric Hamilton. Defendant has moved to strike certain portions of those affidavits.

## II. Defendant's Motion to Strike Portions of Affidavits

### A. Samantha Harrison

■ Defendant has moved to strike paragraph 12 of Samantha Harrison's affidavit, which reads, in pertinent part, as follows:

> About 20 other employees also said they had complained to management at the Restaurant about their not getting paid for all of the hours they had worked. Most of my co-workers who had complained about these pay shortages were teenagers.

Harrison Aff. ¶ 12. Defendant contends that because this statement contains inadmissible hearsay, it cannot be considered in connection with Plaintiff's motion for authority to notify putative members of this collective action. Hearsay is defined as an out-of-court statement, offered by someone other than the declarant, to prove the truth of the matter asserted. Fed. R.Evid. 801(c).

■ Plaintiff argues that because her evidentiary burden at this stage of the proceedings is slight, the Court may consider this statement for the purpose of determining whether similarly situated employees exist even though the statement may ultimately be inadmissible at trial. Courts, however, have repeatedly held that only admissible evidence may be considered in connection with a § 216(b) motion. *See Richards v. Computer Sciences Corp.*, No. 3–03–CV–00630(DJS), 2004 WL 2211691 at *1 (D.Conn. Sept.28, 2004)(striking portions of affidavits submitted in connection with § 216(b) motion because they contained inadmissible hearsay); *McElmurry v. U.S. Bank Nat'l Ass'n*, No. CV–04–642–HU, 2004 WL

1675925 at \*10 (D.Or. July 27, 2004)("plaintiffs are required to show through admissible evidence a 'reasonable basis' for their claim that the employer acted on a class-wide basis."). Plaintiff has presented no authority to the contrary. The Court finds that hearsay statements cannot be considered in connection with a Plaintiff's § 216(b) motion for the purpose of determining whether other employees are similarly situated.

■ In the alternative, Plaintiff argues that paragraph 12 of her affidavit is admissible pursuant to Federal Rule of Evidence 803(3). It contains an exception to the hearsay rule for "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will." Fed.R.Evid. 803(3). In support, Plaintiff cites to just one case, *Taylor v. Cameron Coca–Cola Bottling Co., Inc.*, No. 96–1122, 1997 WL 719106 (W.D.Pa. March 27, 1997), which is clearly distinguishable. In *Taylor*, a pregnant employee filed a sexual harassment claim against her employer. Plaintiff's mother submitted an affidavit concerning her observations of the effect the sexual harassment was having on her daughter. Not surprisingly, the court found that the mother's statement that plaintiff "seemed to have more complaints of neck and back pain during that period" was admissible under Rule 803(3) as a statement of a then-existing physical condition. *Id.* at \*7. This statement clearly fell squarely within Rule 803(3).

The only thing that Plaintiff's statement has in common with the statement in *Taylor* is that they both involve complaints by other people. The complaints that Plain-tiff's coworkers allegedly made, however, were not complaints of a then-existing state of mind, emotion, sensation, or physical condition, but rather complaints that they were not getting paid for all of the hours they had worked. The Court finds that this statement does not fall within any exception to the hearsay rule and must, therefore, be stricken from Plaintiff's affidavit.

### B. Eric Hamilton

■ Defendant has also moved to strike paragraph 7 of Eric Hamilton's affidavit, which reads, in pertinent part, as follows:

[S]everal of my co-workers advised me that this practice [manually reducing the number of hours that employees had reported working] frequently occurred, including one of the Restaurant managers, Carol Farris. These alterations included clocking employees out earlier than the times when they actually stopped working, and adding breaks for employees who did not get to take breaks. These practices were common during my employment with the Restaurant. I frequently overheard several of my co-workers complain about shortages in their paychecks as a result of these practices. I cannot remember the names of all of my co-workers who complained, but I do recall that Samantha Harrison frequently complained to Restaurant managers about these shortages in her paychecks. I also remember my co-workers, Calvin Kline and Larry complained to Restaurant managers about shortages in their paychecks. I cannot remember Larry's last name.

Hamilton Aff. ¶ 7.

For the same reasons set forth above, the Court concludes that Hamilton's statement that he "frequently overheard several of [his] co-workers complain about shortages in their paychecks" is inadmissi-

ble hearsay. The Court rejects Plaintiff's argument that this statement is admissible because Hamilton's testimony is based on his "personal observations" of his co-workers' complaints. The mere fact that he was present when the complaints were made does not make the statements admissible. This reasoning, carried to its logical conclusion, would completely swallow the hearsay rule.

■ The Court reaches a different conclusion, however, with respect to Hamilton's statement that Restaurant manager Carol Farris told him that the Restaurant frequently manually reduced the number of hours that employees reported working. Defendant contends that this is inadmissible hearsay and that Plaintiff has failed to lay a proper foundation. The Court disagrees. Ms. Farris's statement is admissible as an admission of a party opponent under Federal Rule of Evidence 801(d)(2)(D). It is being "offered against a party" and is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment," and it was "made during the existence of the relationship." Fed.R.Evid. 801(d)(2)(D).

■ The Court rejects Defendant's claim that Plaintiff has failed to lay an adequate foundation. Defendant contends that Hamilton's affidavit does not indicate when Farris made the alleged statement, whether she was a manager at the time, whether she had personal knowledge of such matters, or what her relationship was to Harrison or Hamilton. Hamilton's statement, however, clearly refers to Carol Farris as a "co-worker" who was "one of the Restaurant managers." The clear implication is that she was one of the managers during the time that Hamilton was employed there [1] Furthermore, the Court presumes that statements concerning payment of employees are matters within the scope of Ms. Farris's agency or employment relationship, and matters about which she, as a manager, would have personal knowledge.[2] For these reasons, the Court concludes that Hamilton's statement concerning what Ms. Farris told him is based on an adequate foundation and is admissible as an admission of a party opponent.

Defendant has also moved to strike Hamilton's statement that it was a "common practice" for the Restaurant to manually reduce the number of hours reportedly worked. Defendant argued that

1. It may also be inferred that Carol Farris was also one of the managers when Samantha Harrison was employed at the Restaurant. Affidavits indicate that Harrison was employed from approximately March of 2002 until January of 2004. (Harrison Aff. ¶¶ 4, 14). Hamilton's affidavit, dated February 25, 2005, states that he began working at the Restaurant two and one-half years ago, which would be the summer of 2002, and worked with Samantha Harrison for the first one and one-half years. (Hamilton Aff. ¶ 3).

2. Citing *Jacklyn v. Schering–Plough Healthcare Products Sales Corporation*, 176 F.3d 921 (6th Cir.1999), and *Hill v. Spiegel, Inc.*, 708 F.2d 233 (6th Cir.1983), Defendant argues that Rule 801(d)(2)(D) does not apply unless the speaker's duties involved the plaintiff and

the subject matter of the litigation. Those employment discrimination cases, however, are inapposite. In each case, a company manager told the plaintiff why he believed an adverse employment action had been taken. These managers, however, had not participated in the decisions that led to the adverse employment actions. The Court therefore held that the statements were not admissible under Rule 801(d)(2)(D) as admissions of a party opponent because they did not concern "a matter within the scope of their agency." *See Jacklyn*, 176 F.3d at 928; *Hill*, 708 F.2d at 237. In contrast, the statement Ms. Farris made to Eric Hamilton concerned general payroll practices of the Restaurant, a matter presumably within the scope of Ms. Farris's employment as a manager of the Restaurant.

because this statement was based solely on inadmissible hearsay, it lacked an adequate foundation and should be excluded. Because the Court has found that Ms. Farris's statements to Hamilton are admissible, there is no need to address this portion of Defendant's motion.

Although Hamilton's statement regarding Ms. Farris's comments regarding an alleged practice of manually changing the hours an employee reportedly worked meets the requirement for admissibility, any weight to be given by the Court to Ms. Farris's comments must be considered in the context of the entire evidence produced during discovery and brought to the Court's attention by the pending motion. This will be discussed in greater detail later in this Opinion.

### III. Motion for Authority to Notify Potential Class Members

Plaintiff alleges that Defendant violated the FLSA by failing to pay her and other similarly-situated employees for all of the hours they have worked. Pursuant to 29 U.S.C. § 216(b), Plaintiff has requested authority to mail notice of the pending action to nearly 300 other individuals who are now, or were at any time since January 1, 2002, employed as hourly workers at the McDonald's Restaurant on South Hamilton Road in Groveport, Ohio. The proposed notice would advise these potential class members of the pending collective action and give them the opportunity to "opt-in."

Courts have discretion to conditionally certify a class for purposes of serving notice, but only "in appropriate cases." *Hoffmann–LaRoche Inc. v. Sperling*, 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Conditional certification is appropriate only if Plaintiff can show that other potential class members exist who are similarly situated to her. As noted earlier, courts are split concerning what is needed, at this stage of the litigation, to show that other employees are "similarly situated." While some courts have held that mere allegations of a class-wide practice are sufficient, others require at least modest factual support for those allegations. *See Pritchard*, 210 F.R.D. at 595–96.

■ In this Court's view, conditional certification should not be granted unless the plaintiff presents some evidence to support her allegations that others are similarly situated. *See D'Anna v. M/A–COM, Inc.*, 903 F.Supp. 889, 893–94 (D.Md.1995)("the better reasoned cases require the plaintiff to make a preliminary factual showing that a similarly situated group of potential plaintiffs exists" so to "avoid the 'stirring up' of litigation through unwarranted solicitation"). Before subjecting an employer to the burdens of a collective action, "plaintiffs must establish a colorable basis for their claim that a class of 'similarly situated' plaintiffs exists." *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D.Minn.1991). *See also Jackson v. New York Telephone Co.*, 163 F.R.D. 429, 432 (S.D.N.Y.1995)(holding that plaintiffs must "demonstrate a factual nexus" that supports a finding that potential plaintiffs were similarly situated).

■ In order to establish that other employees are similarly situated, Plaintiff must show that, like her, they were not paid all of the wages to which they were entitled because their payroll records were improperly edited. Plaintiff in this case has failed to meet that burden.

Defendant has submitted an affidavit of Jennifer Januszewski, the manager at the Restaurant from January 2004 through March 2005. (Januszewski Aff. ¶ 1; Ex. to Def's Surreply). She explained that McDonald's uses a computerized system to keep track of the hours its employees work. Employees are supposed to punch in and out at the beginning and end of

each shift and each break. However, sometimes employees forget to do this. The system contains an Edit Time Punch function that allows managers to manually add, modify, or delete incorrect punches. (*Id.* at ¶ 2). Managers are instructed to edit time punches at the end of each shift to ensure that the records correctly reflect the hours actually worked. (Ex. 6 to Mot. for Authority). When time punches are edited, the computer generates a Time Punch Change Approval Report to be signed by the employee and the manager.[3] (Ex. 7 to Mot. for Authority).

Januszewski explained that there are many reasons why the time records may need edited. An employee may completely forget to clock in or clock out at the beginning or end of a shift or a break. If an "in" punch is not balanced by an "out" punch, the computer credits the employee with zero hours worked. Other times, if the employee clocks in early or late, the punches may not accurately reflect the hours worked. Managers usually close the daily payroll records at approximately 4:00 a.m. If an employee punches in prior to that time, but punches out after that time, the punches, which are recorded on two different days, are unbalanced. The "out" punch may be read as an "in" punch and, if the employee clocks in to work another shift later that same day, that "in" punch will be read as an "out" punch, the result being that the employee is credited for the time off, rather than the time worked. The Edit Time Punch function is needed to override all of these situations. (*Id.* at ¶¶ 4–11). The Edit Time Punch function is also used when an employee mistakenly enters a double punch or punches in using the wrong employee code. (*Id.* at ¶ 12).

It is Plaintiff's belief that McDonald's also uses the Edit Time Punch function to cover up violations of minor labor laws.[4] She contends that although she and other minor employees were scheduled to work hours that complied with the applicable minor labor laws, their actual working hours were different. They often worked more than eight hours a day, worked late into the night, and, if the Restaurant was busy, worked through required breaks. (Pl. Aff. ¶ 6; Pl. Dep. at 93). Plaintiff testified that if she worked more hours in one day than she was legally permitted to work, the managers would alter her time records to make it look like she worked only eight hours that day so that the Restaurant would not be fined for violations of the minor labor laws. The managers would usually tack the remainder of the time onto another day that week that Plaintiff worked just a few hours, or would wait until she had a day off and "just make it look like [she] came into work that day." Plaintiff testified that the managers would also alter her hours to make it appear that she took a 30–minute lunch break, even if she did not. (Pl. Dep. at 16–17, 46–47, 190). Because 30–minute lunch breaks were unpaid, this negatively impacted her pay.[5] (*Id.* at 50). According to Plaintiff, if she was diligent in reminding the managers to tack the reduced hours onto another day, the managers would do so, but there were times when she was not paid for all the hours she worked. (*Id.* at 17, 42–43, 48, 51–54; Pl. Aff. ¶¶ 8–9).

Defendant argues that while Plaintiff may be able to show that there were times she was not fully compensated for all of

---

3. Plaintiff claims that, in almost all cases, the required signatures were never obtained.

4. There is no private right of action under the FLSA to collect damages for violations of minor labor laws. *See Breitwieser v. KMS*

*Indus., Inc.,* 467 F.2d 1391, 1394 (5th Cir. 1972).

5. FLSA regulations provide that uninterrupted breaks of 30 minutes or longer need not be compensated. 29 C.F.R. § 785.18.

the hours she worked, she has failed to present a colorable basis for her claim that other employees were similarly situated. The Court agrees. During discovery, Defendant produced over 4,000 pages of time-keeping records. These records show thousands of time punch changes made by Restaurant managers over the course of 15 months. (Wafer Aff. ¶¶ 4–5). In the Court's view, there is little doubt that the employees' time records were frequently edited by McDonald's managers. Carol Farris told Eric Hamilton that this was a common practice, (Hamilton Aff. ¶ 7), and this statement is corroborated by Ms. Januszewski's affidavit.

But there is nothing inherently improper or unlawful about editing the time-keeping records. As Ms. Januszewski explained, it is often necessary to edit the records so that they accurately reflect the actual hours worked in order to ensure that the employees are properly compensated. It is not enough for Plaintiff to show that the records were intentionally altered. There are many legitimate reasons why the changes might have been made. Plaintiff admits in one of her briefs that "it is impossible to determine from the records alone what the employee's actual hours of work were, or whether managers' changes increased or decreased the employees' total work hours." (Pl.'s Resp. to Surreply at 9). As Plaintiff's own attorney states, all of these time punch changes are "unexplained." (Wafer Aff. ¶ 5).

Plaintiff speculates that Defendant reduced the hours reportedly worked in order to avoid paying all compensation to which the employees were entitled. She notes that many alterations insert unpaid breaks for employees whose time punches do not indicate that any break was taken. (Id.). Other alterations appear to lengthen reported break times to exactly 30 minutes. (Id.). Unfortunately, Plaintiff offers absolutely no evidence to prove that even

one of these alterations was unwarranted. While she claims that employees did not take the 30–minute breaks that were often inserted, she offers no evidence of that fact. Likewise, while she claims that certain employees' starting and ending times were improperly altered, she offers no evidence of what hours those employees actually worked on the dates in question. She notes that none of the managers who made these changes submitted affidavits stating why the changes were made. However, the burden is on the Plaintiff to prove that other employees are similarly situated.

As Defendant notes, Plaintiff has, for many months, had access to contact information for the approximately 300 potential class members. Yet, as evidence that these employees are similarly situated in that they were not paid all of the wages to which they were entitled, she has presented only her own affidavit and that of Eric Hamilton. Once the hearsay statements are stricken from those affidavits, there is scant evidence that any employee, other than Plaintiff, was not fully compensated for all the hours he or she worked.

 Eric Hamilton states that, like Plaintiff, he often complained to managers about shortages in his paychecks. If he was diligent in his demands that the missing time be tacked onto another day, the time records would be corrected. (Hamilton Aff. ¶ 8). Hamilton states that "[t]o this day, I am uncertain as to whether I was paid for all of my hours of work at the Restaurant ... and I am not certain that I caught all of the changes and made sure they were all corrected." (Id.). Even if the Court were to consider the "possibility" that Hamilton might not have been fully compensated for all the hours he worked, this would not be enough to satisfy Plaintiff's burden of proving that other employees were similarly situated, particularly in light of the fact that there are

approximately 300 potential class members. *See Flores v. Lifeway Foods, Inc.,* 289 F.Supp.2d 1042, 1046 (N.D.Ill.2003)(evidence that only two out of fifty employees were not properly paid overtime wages did not constitute even a "modest factual showing" of a common policy or plan).[6]

In short, Plaintiff has offered nothing but speculation to support her belief that other McDonald's employees were not paid all of the money to which they were entitled. Therefore, in the Court's view, there is no basis for granting Plaintiff's motion for authority to notify putative plaintiffs about the pendency of this action or their right to opt-in to this action. *See Haynes v. Singer Co., Inc.,* 696 F.2d 884, 887 (11th Cir.1983)(counsel's unsupported allegations of widespread FLSA violations were insufficient to justify notice to others); *H & R Block, Ltd. v. Housden,* 186 F.R.D. 399, 400 (E.D.Tex.1999)(conclusory allegations contained in affidavits were insufficient to satisfy burden of showing that others were similarly situated).

Defendant also argues that conditional certification would be improper because the claimed FLSA violations are not amenable to treatment as a collective action. With respect to each employee, the Court would have to compare the hours actually worked to the hours shown on the edited time records. If there was a discrepancy, the Court would have to determine why the time records were edited and determine whether hours that were deleted were credited elsewhere. Defendant contends that this kind of fact-intensive, individualized inquiry, encompassing more than 4000 pages of time records, is not amenable to a collective action. *See Sheffield v. Orius Corp.,* 211 F.R.D. 411, 413 (D.Or.2002)("an action dominated by issues particular to individual plaintiffs can not be administered efficiently because individual issues predominate over collective concerns").[7] These are certainly valid concerns. However, since the Court has already determined that Plaintiff has failed to satisfy even her minimal burden of showing that other McDonald's employees are similarly situated, the Court need not address this additional argument.

## IV. Conclusion

For the reasons set forth above, Defendant's motion to strike portions of Samantha Harrison's and Eric Hamilton's affidavits (Record at 33) is **GRANTED IN PART and DENIED IN PART.** Paragraph 12 of Ms. Harrison's affidavit is stricken from the record. The Court also strikes the portions of paragraph 7 of Mr. Hamilton's affidavit that state that "several of my co-workers advised me that this practice [manually reducing the number of

---

6. Plaintiff also testified that she observed one of the managers altering the time records of employee Dale Whitesel, but Plaintiff admitted that she did not know whether Whitesel was eventually paid for all of the hours he worked. (Pl. Dep. at 111–12).

7. Defendant contends that this case is analogous to *Dudley v. Texas Waste Systems, Inc.,* No. Civ. A.SA–05–CA–0078, 2005 WL 1140605 (W.D.Tex. May 16, 2005). The court in that case denied plaintiff's motion for authority to proceed as a collective action under § 216(b). Plaintiff claimed that even though he and his co-workers rarely took the required lunch breaks, the employer nevertheless reduced the hours reportedly worked to account for these breaks. The court noted that analysis of these claims would require "individualized testimony regarding whether drivers regularly took lunch breaks, or only occasionally." *Id.* at *2. In order to determine damages, the fact finder would have to determine the dates on which each employee worked through lunch and then determine whether the employee had worked less than 12 hours that day, in which case he might be entitled to an extra half-hour of compensation, or had worked more than 12 hours that day, in which case he might be entitled to a full hour of compensation. *Id.*

hours reportedly worked] frequently occurred," and that "I frequently overheard several of my co-workers complain about shortages in their paychecks as a result of these practices."

Because Plaintiff has failed to establish any colorable basis for her claim that other McDonald's employees are similarly situated in that they were not fully compensated for all the hours they worked, the Court **DENIES** her motion for authority to notify potential class members of the pendency of this action and of their right to opt-in (Record at 29).

**IT IS SO ORDERED.**