Debbie FIELDS, and Mark Jackson, individually and on behalf of all persons similarly situated, Plaintiffs,

v.

AOL TIME WARNER, INC., Time Warner Entertainment Company, L.P., and Time Warner Telecom of the Mid–South, L.P., Defendants.

No. 02–2402 DA.

United States District Court,
W.D. Tennessee,
Western Division.

Jan. 7, 2003.

Alan G. Crone, James R. Becker, Jr., Crone & Mason, PLC, James J. Webb, Jr., Crone & Mason, Memphis, TN, for Debbie Fields, individually and on behalf of all persons similarly situated, Mark Jackson, individually and on behalf of all persons similarly situated.

Robert M. Williams, Jr., Angie Davis, Baker, Donelson, Bearman & Caldwell, Memphis, TN, Michael S. French, Michael Kabat, Joseph W Ozmer, II, Duane Morris, LLP, Atlanta, GA, for Time Warner Entertainment Company, L.P., Delaware Limited Partnership licensed and authorized to do business in Tennessee, Time Warner Telcom of the Midsouth, L.P., Delaware Limited Partnership licensed and authorized to do business in Tennessee, AOL Time Warner, Inc, Delaware Corporation doing business in Tennessee dba Time Warner Cable.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DONALD, District Judge.

This matter is before the Court upon the motion for summary judgment of Defendants, AOL Time Warner, Inc., Time Warner Entertainment Company, L.P., and Time Warner Telecom of the Mid–South, L.P. (collectively "Time Warner"). Plaintiffs, Debbie Fields and Mark Jackson, individually and on behalf of all persons similarly situated, assert that Defendants violated 29 U.S.C. §§ 206 and 207 of the Fair Labor Standards Act ("FLSA"), requiring minimum wage and overtime compensation for non-exempt employees. Defendants contend that no genuine issue of material fact exists as to Plaintiffs' FLSA claims because Plaintiffs' employment positions were those of "outside salesmen," and thus, exempt from the minimum wage and overtime provisions of the FLSA. For the following reasons, the Court grants Defendants' motion for summary judgment.

## I. BACKGROUND

Mr. Jackson and Ms. Fields began working for Time Warner in June of 2001 and July of 2001, respectively, as Direct Sales Representatives ("DSR"). The DSR positions were advertised as sales positions and required representatives to sell cable services door-to-door. Dep. of Mark Jackson at 17–18 (hereinafter "Jackson Dep. at ___."); Dep. of Debbie Fields at 13 (hereinafter "Fields Dep. at ___."). Upon hire, Time Warner trained and instructed Plaintiffs as to the products they were to sell, as well as techniques for selling the products. Jackson Dep. at 20; Fields Dep. at 29–30. Time Warner assigned Plaintiffs a list of contacts bi-weekly, called lead sheets. The lead sheets consisted of former customers of Time Warner. Plaintiffs were permitted to make sales only from the list. Plaintiffs received a sales commission for each sale made. Defs.' Mot. For Summ. J., Commission Scale, Ex. B. Any sales made to persons on the lead sheets resulted in the payment of commissions. Commissions comprised the majority of Plaintiffs' compensation. Jackson Dep. at 78. Plaintiffs also received compensation for the collection of delinquent accounts and the recovery of Time Warner equipment. Defs.' Mot. For Summ. J., Commission Scale, Ex. B.

Plaintiffs' job duties included selling cable subscriptions, auditing cable lines [1], and collecting delinquent accounts. Plaintiffs were responsible for setting their work schedule and for planning their workday. Jackson Dep. at 85; Fields Dep. at 85. Plaintiffs had sales quotas

---

**1.** An audit consists of checking the cable lines that run into a home to determine whether the resident is receiving unauthorized cable service.

that they were expected to meet, but no debt collection quotas. Jackson Dep. at 60–61; Fields Dep. at 44. Time Warner counseled DSRs who failed to meet their sales quotas. Jackson Dep. at 81–82.

If a customer maintained a balance with Time Warner, Plaintiffs were required to collect the debt before they could sell services to the potential customer. Plaintiffs were permitted, however, to avoid calling on leads who showed an outstanding back balance. Jackson Dep. at 85–86. Plaintiffs were permitted to forgive, pursuant to the Time Warner "Customer Recovery Program" ("CRP"), up to $299 in debt that was more than twelve months past due in order to make a sale of new services. Jackson Dep. at 43–45; Fields Dep. at 91. Plaintiffs used the CRP to make sales to potential customers who owed back balances to Time Warner, in which instances Plaintiffs did not have to collect the back balance. *Id.* Time Warners' payroll records indicate that Mr. Jackson and Ms. Fields collected back balances twice and five times, respectively, and these collections were made in conjunction with sales. Decl. of Inetta Rogers at ¶¶ 9–10 (hereinafter "Rogers Decl. at ___."). Mr. Jackson's collections comprise less than two tenths of one percent of his total gross compensation. *Id.* at ¶ 11. Ms. Fields' collections comprise one percent of her total gross compensation. *Id.* at ¶ 12.

After Plaintiffs terminated their employment with Time Warner, Plaintiffs filed a cause of action against Defendants alleging that they were entitled to minimum wage and overtime during their employment with Defendants. On November 5, 2002, Defendants filed a motion for summary judgment asserting that Plaintiffs were exempt from the FLSA overtime and minimum wage requirements pursuant to 29 U.S.C. § 213(a)(1). The Court will now consider Defendants' motion for summary judgment.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment may be granted if no genuine issue of material fact exists, and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. Material facts are those facts which are defined by substantive law and are necessary in order to apply the law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the non-moving party. *Id.*

In evaluating a motion for summary judgment, the evidence, facts, and any inferences must be viewed in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Walborn v. Erie County Care Facility,* 150 F.3d 584, 588 (6th Cir.1998). Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Summary judgment is appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348.

## III. ANALYSIS

█ Plaintiffs argue that they were entitled, pursuant to the FLSA, to be paid minimum wage and overtime during their employment with Time Warner in Memphis. Federal law requires employers to pay employees a statutory minimum wage and overtime pay for hours worked in excess of the statutory maximum. *See* 29 U.S.C. §§ 206, 207. The FLSA exempts,

however, "any employee employed ... in the capacity of outside salesman" from the minimum wage and overtime provisions. 29 U.S.C. § 213(a)(1). Defendants assert that Plaintiffs' employment as DSRs falls within the outside salesman exemption definition. An "outside salesman" is an employee:

(a) Who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business in:

(1) Making sales within the meaning of section 3(k) of the Act, or

(2) Obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

(b) Whose hours of work of a nature other than that described in paragraph (a)(1) or (2) of this section do not exceed 20 percent of the hours worked in the workweek by nonexempt employees of the employer: Provided, That work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall not be regarded as nonexempt work.

29 C.F.R. § 541.5. To determine whether work is "incidental to and in conjunction" with the employee's sales or solicitations, the regulation provides that

[w]ork performed "incidental to and in conjunction with the employees own outside sales or solicitations" includes not only incidental deliveries and collection which are specifically mentioned in § 541.5(b), *but also any other work performed by the employee in furthering his own sales.*

29 C.F.R. § 541.503 (emphasis added).

■ An employer who relies on an exemption to the minimum wage and overtime provisions of the FLSA maintains the burden of proving that the employee is properly classified under the exemption.

*Mich. Ass'n of Governmental Employees v. Mich. Dep't of Corr.*, 992 F.2d 82, 83 (6th Cir.1993). Moreover, the employer must establish that the employee meets every aspect of the definition for an exempt employee. *Schaefer v. Ind. Mich. Power Co.*, 197 F.Supp.2d 935, 938 (W.D.Mich.2002) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974)). Exemptions from the FLSA's coverage must be narrowly construed against the employer who asserts them. *Id.* at 938–39 (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960)). "[H]ow an employee spends his time is a question of fact, while the question of whether his activities fall within an exemption is a question of law." *Id.* at 939 (citing *Reich v. Wyoming*, 993 F.2d 739, 741 (10th Cir.1993)); *See also Renfro v. In. Mich. Power Co.*, 233 F.Supp.2d 1174, 1180 (W.D.Mich.2002); *Dalheim v. KDFW–TV*, 918 F.2d 1220, 1226 (5th Cir. 1990) (stating that "the ultimate determination of whether an employee is exempt [is] properly characterized as a conclusion of law," even though "based on both historical fact and factual inferences").

■ Courts have articulated additional factors that are probative of an employee's status as an outside salesman. Among these factors, a court may consider whether the employee 1) must solicit new business, 2) receives sales training, and 3) was hired and denominated as a salesman. *See Hodgson v. Krispy Kreme Doughnut Co.*, 346 F.Supp. 1102, 1104–06 (M.D.N.C.1972); *Jewel Tea Co. v. Williams*, 118 F.2d 202, 208 (10th Cir.1941). Courts have also considered whether the position was advertised as a sales position. *E.g., Krispy Kreme*, 346 F.Supp. at 1104–06; *Jewel Tea Co.*, 118 F.2d at 208.

■ This Court will now determine whether Defendants have established the

first part of the "outside salesman" exemption, 29 C.F.R. § 541.5(a). Plaintiffs allege that their primary activity was not sales. In support of this proposition, Plaintiffs assert that Defendants' internal DSR job description classifies DSRs as non-exempt. Pls.' Answer To Defs.' Mot. For Summ. J. at 3. A review of the job description discloses that the description lists DSRs as non-exempt. Inetta Rogers, a Time Warner employee who drafted the job description, submitted a declaration which states that she used the non-exempt designation only to indicate that the position was a lower level entry position and not a salaried, executive position. Second Rogers Decl. The Court finds that while the label of "non-exempt" may be evidence that a position is not exempt, such a label is not dispositive. Instead, the actual job duties and actions performed by the employee are dispositive. This is especially true in a case such as this where Defendants have proffered a legitimate explanation for the use of the "non-exempt" label in the internal job description.

Plaintiffs admit that they were hired to sell and "customarily and regularly" did sell cable services door-to-door when employed at Time Warner. *See* 29 C.F.R. § 541.5(a). Plaintiffs spent a majority of their time working away from the Time Warner office and without supervision. *See id.* Plaintiffs also determined their work hours and work schedules. *See id.* Furthermore, the majority of Plaintiffs' compensation came from sales commissions. *See e.g., Krispy Kreme,* 346 F.Supp. at 1104–06; *Jewel Tea Co.,* 118 F.2d at 208. Plaintiffs were responsible for soliciting new business and were counseled when they failed to meet sales quotas. *See id.* Likewise, Plaintiffs received sales training in products and techniques. *See id.* These facts establish that Plaintiffs were employed for the purpose of and did regularly and customarily engage in selling services away from the Time War-

ner office. This Court concludes, therefore, that Defendants have established the first part of the outside salesman exemption, 29 C.F.R. § 541.5(a)(2).

The Court will now consider whether Defendants have established the second part of the "outside salesman" exemption. Plaintiffs allege that their essential duties included collecting payments, completing cable residential audits, and collecting debt and Time Warner equipment. Moreover, Plaintiffs maintain that the real function of the DSR position was to audit for illegal cable and collect bad debt. Defendants argue, however, that these duties were "incidental to and in conjunction" with Plaintiffs' sales or solicitations. *See* 29 C.F.R. § 541.5.

With respect to the audit of cable lines, Plaintiffs assert that they were instructed by Defendants to audit every cable line on their lead sheet. Decl. of Sheila Robinson at ¶ 7 (hereinafter "Robinson Decl. at ___."); Decl. of Debbie Fields at ¶ 10 (hereinafter "Fields Decl. at ___."); Decl. of Mark Jackson at ¶ 10 (hereinafter "Jackson Decl. at ___."). Furthermore, Plaintiffs claim that they had to perform the audit even if they could not approach the customer for a sale. Robinson Decl. at ¶ 10; Fields Decl. at ¶ 13; Jackson Decl. at ¶ 13. DSRs could not make sales attempts to leads who had a current bankruptcy filing. Fields Decl. at ¶ 9; Jackson Decl. at ¶ 9. No other instances are indicated in the record or briefs in which Plaintiffs were prohibited from attempting to make a sale.

Defendants assert that even when the lead sheets associated a bankruptcy with the lead address, Plaintiffs were encouraged to make face-to-face contact with the persons on their lead sheets because another adult who was not in bankruptcy could subscribe to the service or the bankrupt party may no longer reside at the address. Decl. of Chris Vokaty (hereinaf-

ter "Vokaty Decl."). Defendants assert, therefore, that DSRs could approach the residence to attempt a sale even when a bankruptcy was indicated on the lead sheet, and the audit would have been performed with a view to furthering the DSRs' sales efforts. In fact, Mr. Jackson stated in his deposition testimony that frequently the person associated with a particular residence on the lead sheet had moved and he would find another person residing there. Jackson Dep. at 95–96. Furthermore, Defendants maintain that only 3.7% of the current non-subscribing residences in their database, which generates the lead sheets, indicate that someone who may reside at that address may have a current bankruptcy. Vokaty Decl. Thus, the Court finds that audits of potentially bankrupt leads do not preclude Plaintiffs from being outside salesmen because bankrupt leads were the only persons to whom a sale could not be made. This Court concludes, therefore, that even if the audits of these "bankrupt" residences were not "incidental to or in conjunction with a sale," these audits could not "exceed 20 percent of the hours worked in the workweek by nonexempt employees." 29 C.F.R. § 541.5(b).

Plaintiffs further assert that other evidence exists to prove that audits were their real function. DSRs are trained to identify the leads that run into the homes, identify which homes receive unauthorized cable service, note unauthorized use on the DSR lead sheet, disconnect the line, and tag the line as disconnected. Dep. of Dave Nicolow at 31 and 34. The information gathered by DSRs during their audits is forwarded to another department for either disconnection or monitoring. *Id.* at 31. Furthermore, one of Defendants' internal documents intended for the direct sales department indicates that a goal existed for the number of audits to be performed monthly by DSRs. Pls.' Answer to

Defs.' Mot. For Summ. J., Ex. 8. This document reads:

> The conduct of the yearly sales sweep activities will *additionally aid* in meeting the established requirement for audit of all passings in the divisions. *In-house and contractor sales representatives will conduct audit activities for all [non-subscription] passings in conjunction with their sales actions.* This procedure will insure that all non-subs, in fact, are not currently receiving unauthorized service or, in the case of BST customers, receiving a service level higher than which they are currently subscribed to. *Passings found [unauthorized] will be contacted for the sales opportunity.* Passings found [unauthorized and] not sold will be disconnected and information passed to Tap Audit for appropriate action. This will provide a program of documentation and prosecution for chronic illegals that is consistent with local regulations and laws. Detailed [unauthorized] listings will be retained and submitted as a component of the weekly sales activity report. Reporting of any disconnects not completed should be made *when encountered during sales activities. The attached reporting form must be filled completely as this information is reported to corporate in a periodic and timely basis.*

*Id.,* Ex. 8 at 2 (emphasis added except in last sentence). The document continues to state that the reports completed by DSRs and then compiled by the sales department will provide "an overview of the departments' results in attaining [ ] assigned sales and audit objectives." *Id.* at 5. Another internal document provides with respect to Time Warner's audit department that "[m]any divisions have experienced increased success by training the audit personnel to make a conversion attempt at the door before the customer is disconnected." *Id.,* Ex. 9 at 4.

Defendants assert, however, that auditing of cable lines was a tool used by DSRs to make sales. Mr. Jackson admitted that he used the audit to tailor his sales approach to a particular customer. Dep. of Jackson at 30. Ms. Fields likewise testified that her sales team leader, Tyrone Armour, taught her that auditing was a highly useful tool for making sales. Dep. of Fields at 32–33. She also stated that auditing in preparation of making a sales call was the biggest tip she received for increasing her sales and that the audits helped her close sales. *Id.* at 39 and 46.

Defendants' internal documents, when viewed alone, may create a genuine issue of material fact as to whether auditing was incidental to or in conjunction with sales because different provisions of these documents support both Plaintiffs' and Defendants' positions. The determinative factor, therefore, is not what the documents appear to indicate. Instead, whether auditing is incidental to sales depends upon the purpose the auditing served. Section 541.503, Chapter 29 of the Code of Federal Regulations clearly states that "[w]ork performed 'incidental to and in conjunction with the employees own outside sales or solicitations' includes ... *any other work performed by the employee in furthering his own sales.*" (Emphasis added). Plaintiffs' testimony clearly indicates that the auditing activity was "work performed by the employee[s] in furthering [their] own sales." *See* 29 C.F.R. § 541.503. The Court concludes, therefore, that Defendants have established, with respect to auditing, the second element of the "outside salesman" exemption.

The Court must now examine Plaintiffs' assertion that debt collection was their primary duty. It is undisputed that Plaintiffs had to collect any debt owed to Time Warner before they could make a sale. Plaintiffs were permitted, however, to avoid calling on leads who showed an out-standing back balance. Jackson Dep. at 85–86. Likewise, Plaintiffs were permitted to forgive, pursuant to the Time Warner CRP, up to $299 in debt that was more than twelve months past due in order to make a sale of new services. Jackson Dep. at 43–45; Fields Dep. at 91. Plaintiffs admit that they used the CRP to make sales to potential customers who owed back balances to Time Warner, and in those instances Plaintiffs did not have to collect the back balance. *Id.* Furthermore, Time Warner's payroll records establish that Mr. Jackson and Ms. Fields collected a back balance twice and five times respectively, and these collections were made in conjunction with sales. Rogers Decl. at ¶¶ 9–10. Mr. Jackson's collections comprise less than two tenths of one percent of his total gross compensation. *Id.* at ¶ 11. Ms. Fields' collections comprise one percent of her total gross compensation. *Id.* at ¶ 12. These facts clearly show that debt collection was "incidental to and in conjunction with" Plaintiffs' sales of cable services. 29 C.F.R. § 541.5(b). Accordingly, this Court concludes that Plaintiffs' debt collection activities fall within the "outside salesmen" exemption, 29 U.S.C. § 213(a)(1).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED.**