**Reynaldo MIRANDA–ALBINO,**
**Plaintiff,**

v.

**FERRERO, INC. d/b/a Ferrere Caribe, Inc., Defendant.**

**Civil No. 04–2340 (GAG).**

United States District Court,
D. Puerto Rico.

Oct. 5, 2006.

---

68

Carlos M. Vergne–Vargas, Jose A. Rios–Rosa, Carlos M. Vergne Law Office, San Juan, PR, for Plaintiff.

Myriam E. Matos–Bermudez, Sosa Llorens Cruz Neris & Assoc., Guaynabo, PR, for Defendant.

## OPINION AND ORDER

GELPI, District Judge.

The plaintiff, Reynaldo Miranda–Albino ("Miranda"), commenced this action against his employer, Ferrero, Inc., d/b/a Ferrero Caribe ("Ferrero"), alleging that Ferrero violated provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Puerto Rico's Working Hours and Days Act ("Law No. 379"), P.R. Laws Ann. tit. 29, § 271 *et seq.*, by failing to pay him overtime and meal compensation. Presently before the court is the defendant's second motion for summary judgment (Docket No. 37). After reviewing the relevant facts and applicable law, the court **DENIES** the defendant's motion for summary judgment.

## I. Relevant Factual & Procedural Background

The parties' statements of material facts, credited only to the extent either admitted or properly supported by record citations in accordance with Local Rule 56 and viewed in the light most favorable to the plaintiff, reveal the following undisputed material facts:

From October 23, 2000 until February 5, 2003, Miranda worked for Ferrero. *See* Docket No. 1, ¶ 8. According to the Ferrero Caribe Job Description signed by Miranda, the company employed him as a "direct delivery salesperson." *See* Docket No. 38, ¶ 2. Miranda maintains that he was employed as a "route driver." *See* Docket No. 46–1, ¶¶ 2, 3, 6, 10. Throughout his deposition, Miranda constantly referred to himself as a "route driver", although he did call himself a "salesperson" on one occasion. *Id.* at ¶ 10. Both parties agree that the title given to his position was "cash-van." *Id.* at ¶ 2.

During the entire period that Ferrero employed Miranda, he drove a refrigerated truck, called a "cash-van," in his assigned route in Carolina and Canóvanas which consisted of over 70 established clients. Before leaving Ferrero's premises each day, Miranda inspected the truck to ensure that it was in proper driving condition. He also loaded the truck with merchandise whenever the need arose. *See* Docket No. 38, ¶ 3. Miranda established a weekly schedule for visiting clients. *See* Miranda Depo. pp. 109–10.[1] Each week, his supervisor, José Alonso ("Alonso") had to approve the schedule and any subsequent changes. *Id.* Upon arriving at the client's place of business, the client told Miranda how much product it needed. He then delivered the amount of merchandise the client requested. *See* Docket Nos. 38, ¶ 3 and 46–2, ¶ 4. When asked how he knew beforehand how much product a client may need, Miranda testified that he attended training with Roberto Guadalupe, Jr. ("Guadalupe, Jr.") during which Guadalupe, Jr. provided him with a list identifying his clients and indicating each client's needs. *See* Docket Nos. 46–1, ¶ 3 and 46–2, ¶ 2. Guadalupe, Jr. also trained Miranda on how to place merchandise and informed him that he would frequently be required to wait at a client's place of business until the client was ready to accept delivery. *See* Miranda Depo. pp. 44, 52–53.

Robert Guadalupe, Sr. ("Guadalupe, Sr.") was in charge of scheduling and setting up special sales events at several supermarket chains on Miranda's route. After Guadalupe, Sr. set up the event, Miranda delivered the merchandise. *See* Docket No. 46–2, ¶¶ 7–8. Alonso, Miranda's supervisor, made the arrangements for deliveries to certain larger clients, for example Wal–Mart and Muñiz Air National Guard Base. If these large clients wanted other products, Miranda was required to call his supervisor for authorization. *See* Docket No. 46–1, ¶ 3.

While at a client's place of business, Miranda would price the newly delivered merchandise, arrange it on shelves or in coolers, and rotate the stock according to date to guarantee freshness. He would also prepare invoices detailing the delivered products and any payment received. At times, clients chose to make a payment to Miranda; at other times, clients made payments directly to Ferrero. If a client wished to make a payment to him for bills other than for the merchandise he delivered that day, past-due invoices for exam-

---

1. Ferrero submitted most of Miranda's deposition transcript as exhibits to its Statement of Uncontested Material Facts. *See* Docket No. 38, Exhibit 1 (pp.17–20, 37–63), Exhibit 2 (pp. 64–106), Exhibit 3 (pp. 107–49).

ple, Ferrero required Miranda to call Alonso. Alonso would then instruct the plaintiff how to proceed. Alonso also had to authorize all deliveries to clients who owed the company money. *See* Docket No. 46–1, ¶ 3. Certain clients on Miranda's route had a cash on delivery ("C.O.D.") payment agreement with Ferrero. The company required C.O.D. clients to pay before Miranda could deliver any merchandise to them. *Id.* at ¶ 8. Whenever Miranda accepted payments from a client, he would deposit the money in Ferrero's bank account on the same day. Occasionally, he made collections from his clients using an "aging report" provided to him by his supervisor. *See* Docket No. 38, ¶ 3. The aging report listed the clients on Miranda's route who owed Ferrero money. *See* Miranda Depo. p. 135. On no more than five occasions, Miranda also handled matters related to returned checks due to insufficient funds of clients in his assigned sales route. *See* Docket No. 38, ¶ 3; Miranda Depo. pp. 135–36.

From time to time, Miranda would offer new products, special offers, and discounts to clients. *See* Docket No. 38, ¶ 3. He only made such offers when authorized and instructed to do so by his supervisor. Miranda testified that Ferrero sent announcements to clients regarding sales offers. If a client showed interest in the offer, then he would contact his account supervisor to get authorization to deliver the product. *See* Docket No. 46–1, ¶ 3. The sales manager, and not Miranda, had the power to decide whether to offer a discount. *Id.*

While no one at Ferrero prohibited Miranda from soliciting new clients in his route, he could not establish a new client without first obtaining authorization from Alonso. *Id.* at ¶¶ 3, 7. When Alonso authorized him to go to a new client, Miranda would offer the client products from the Ferrero sales catalog and complete any necessary forms. *Id.* at ¶ 3. Miranda also testified that the time he spent delivering to established customers prevented him from being able to find new clients. *See* Miranda Depo. pp. 73, 123. He went to a new client only when Alonso told him to do so. *See* Docket No. 46–1, ¶ 4.

With Miranda's agreement, Ferrero compensated him on a commission basis. The amount of product Miranda delivered dictated the amount of his commission. Ferrero calculated the precise amount of the his commission on the basis of the invoices he submitted daily. *Id.* If Miranda convinced the client to purchase more products, he would call Ferrero to get authorization to deliver the product. If Ferrero authorized the delivery, he would receive more commissions. Miranda testified, however, that it was not his job to convince clients to buy more products. *Id.* at ¶ 5.

On a typical day, Miranda took his lunch break between 10:00 a.m. and 1:00 p.m. On some days, he did not take a lunch break.[2] *See* Docket No. 38, ¶ 12. At the end of every day, Miranda submitted a form to the Sales Department secretary on which he recorded the time he arrived at Ferrero's facilities to begin his work day and the time he returned to Ferrero at the end of his work day. *Id.* at ¶ 11. He also prepared and submitted to his supervisor daily sales reports and deposit slips when he made a deposit in the Ferrero account. *Id.* at ¶ 3. Unlike most other Ferrero drivers, Miranda left his truck at Ferrero's facilities because he did not have anywhere to plug in the refrigerated vehicle at his home. *See* Docket No. 46–1, ¶ 9.

---

2. The plaintiff does not recall how often he did not take lunch, and he did not keep a record of such information. *See* Docket No. 38, ¶ 12.

While Miranda worked for Ferrero, the company employed individuals who drove trucks and delivered merchandise to the entire island. Unlike Miranda, these individuals did not drive a "cash-van," receive orders from clients, accommodate merchandise, or accept payments. They primarily worked in the warehouse under the supervision of Geraldo Carrasquillo, the warehouse manager. *Id.* at ¶ 14.

During Miranda's deposition, Ferrero's counsel questioned him about each of the "Duties and Responsibilities" listed in the "Ferrero Caribe Job Description" for "Direct Delivery Salesperson."[3] Miranda testified that he *was not responsible* for the following duties listed in the job description: presenting and offering the assigned product line; informing the customer about the prices suggested by Ferrero for each product; keeping updated the customer information card and notifying the Customer Service Department of any change to the same; taking inventory of the existing product at each customer; negotiating with the customer the placement of the product in the most visible and commercial area of the business and that, in turn, helps to maintain the quality and freshness of Ferrero's product; contacting new customers, visiting them, and making a presentation of the complete line of products distributed by Ferrero; preparing and sending to the supervisor daily a list of the products of the competition found at the customer; and preparing an inventory and tally of the existing merchandise in the cash-van, including units sold and money collected, once the daily work has concluded. The job description says Miranda was responsible for "maximizing the sales volume and achieving and/or surpassing compliance with his established sales quota." Miranda testified, however, that he was never given a sales quota. *See* Miranda Depo. pp. 103–29.

Miranda confirmed that he *was actually responsible* for the following listed duties: informing the customer about all types of offers or promotions established by Ferrero, exchanging products, or introducing new products to the market, when authorized by his supervisor; reviewing and verifying the expiration date of all existing products; withdrawing from the customer any product that does not meet the norms and standard of quality and freshness established by Ferrero; rotating the products on the customer's shelves to ensure that they are placed in accordance with norms and standards of quality and freshness established by Ferrero; filling out and completing the customer's purchase order; requesting from the Customer Service Department approval for a sale to clients not pre-established; collecting from the customer any overdue invoices; dispatching the purchase order and reviewing together with the customer that the merchandise is complete and according to the purchase order; marking the merchandise with the suggested price and placing it on

---

3. In paragraph 15 of its Statement of Uncontested Material Facts, Ferrero refers to the job description and states that Miranda performed "most" of the listed duties. Ferrero goes on to list the duties and responsibilities included in the description. It does not, however, indicate which of the myriad duties Miranda *actually* performed. Moreover, Ferrero lists two duties not actually included in the description: perform outside sales in his assigned sales route in the Carolina area and obtain sales orders in his assigned sales route in the Carolina area. A review of Miranda's deposition, reveals that Miranda testified that he did not perform a number of the listed duties. *See* Miranda Depo. pp. 103–129. The outcome in a case like this is so substantially affected by the nature of the plaintiff's work that a court must consider the actual activities of the employee. *See Hodgson v. Klages Coal & Ice Co.*, 435 F.2d 377, 379 (6th Cir. 1970). Consequently, the court shall directly to Miranda's deposition testimony rather than paragraph 15 of Ferrero's statement of facts.

the shelves and exhibit areas; verifying the presentation of the product meets the standards and policies of Ferrero and, if necessary, cleaning the shelves of the products; in the case of new customers, completing the customer information card and a credit application and delivering them, duly filled out, to the Customer Service Department, following the norms and policies established by Ferrero; preparing and sending to the supervisor a daily sales report, including a list of the customers visited and the amount and price of products sold; loading and supplying the cash-van and taking an inventor of the existing products; depositing all monies collected following the norms established by Ferrero; sending to the supervisor the original of all reports, inventory, and deposits; maintaining a copy in the file of all of the reports sent to Ferrero; and attending the meetings of the Sales Department.[4] *Id.*

Ferrero's counsel also questioned Miranda regarding why he does not believe he was a salesman. Miranda explained that he did not believe he was engaged in sales because Ferrero gave him a list of clients and told him what those clients typically bought. *See* Docket No. 46–1, ¶ 10. Additionally, the products he delivered were pre-established by Ferrero and he had no discretion and independent judgment. Finally, the plaintiff explained that, in his view, sales involves visiting clients with a briefcase to offer products. In contrast, he testified that delivery involves taking products in a truck to the client, unloading the product, accommodating it on the shelves, rotating the product, and pricing it. *See* Docket No. 38, ¶ 13.

Miranda filed this action on December16, 2004 alleging that Ferrero violated the FLSA and Puerto Rico Law No. 379

by failing to pay him overtime and meal compensation. Ferrero responded, in a motion for summary judgment, that the FLSA and Puerto Rico Law No. 379's overtime requirements did not apply because Miranda qualified as an "outside salesperson" and was thus exempt from overtime rules. *See* Docket No. 6. The court assigned this case to then-Magistrate Judge Aida Delgado–Colón for a Report and Recommendation. *See* Docket No. 20. On April 12, 2005, the Magistrate Judge recommended that the court deny Ferrero's summary judgment motion because genuine issues of material fact remained regarding whether Miranda was employed for the purpose of outside sales. *See* Docket No. 25. In an order dated September 6, 2005, the court approved and adopted the Magistrate Judge's recommendation and denied Ferrero's summary judgment motion. *See* Docket No. 27.

On January 4, 2006, Ferrero deposed Miranda. *See* Docket No. 38, Exhibits 1–3. Ferrero now argues, in its second motion for summary judgment, that Miranda's admissions and testimony during his deposition reveal that he was an outside salesperson. *See* Docket No. 37. Consequently, Ferrero requests that this court grant its summary judgment motion and dismiss Miranda's claims.

## II. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91

4. The final duty listed is "[o]ffering support, as may be required, to the Sales Department." Miranda testified that he did not know what this meant. *See* Miranda Depo. p. 129.

L.Ed.2d 265 (1986). In order to defeat summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). When considering a summary judgment motion, the court must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of any and all reasonable inferences. *Id.* The court does not consider "conclusory allegations, improbably inferences, and unsupported speculation." *Forestier Fradera v. Municipality of Mayaguez,* 440 F.3d 17, 21 (1st Cir.2006) (quoting *Benoit v. Technical Mfg. Corp.,* 331 F.3d 166, 173 (1st Cir.2003)). If the court concludes that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny the motion. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. Fair Labor Standards Act

In the present case, Ferrero argues it is entitled to summary judgment because Miranda is exempt from the FLSA's overtime and meal compensation provisions inasmuch as he qualifies as an "outside salesman." Miranda contends that the uncontested material facts support a conclusion that he was not an "outside salesman." The court finds that, based on the undisputed facts, Ferrero has failed to show that the work Miranda performed plainly and unmistakably satisfies the terms and spirit of the outside salesperson exemption.

 The FLSA requires employers to pay overtime for hours worked in excess of 40 hours per week. *See* 29 § U.S.C.

207(a)(1). As a general rule, the FLSA establishes that an employer must compensate employees at a rate not less than one and one-half times their regular rate for all overtime hours worked. *De Jesús–Rentas v. Baxter Pharmacy Servs. Corp.,* 400 F.3d 72, 74 (1st Cir.2005). An employee classified as an outside salesperson, however, is exempt from this requirement. *See* 29 U.S.C. § 213(a)(1). Congress enacted the exemption to address the incompatibility of wage and hour requirements with the individual character of the job performed by a salesperson who works without time restrictions and who can earn as much or as little as his ability and ambition dictate. *See Jewel Tea Co. v. Williams,* 118 F.2d 202, 208 (10th Cir. 1941).

 The employer in an FLSA case bears the burden of proving an employee's exempt status. Moreover, because of the remedial nature of the FLSA, the court must narrowly construe its overtime exemptions against the employer. *De Jesús–Rentas,* 400 F.3d at 74 (quoting *Reich v. Newspapers of New Eng., Inc.,* 44 F.3d 1060, 1070 (1st Cir.1995)). In fact, the Supreme Court of the United States has strictly limited the application of FLSA overtime exemptions to employees who come "plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960).

Regulations issued by the Secretary of Labor define and delimit the scope of the outside salesperson exemption. *See* 29 C.F.R. § 541.5 (2004).[5] During the relevant time period, the applicable regulations defined an "outside salesman" as any employee:

**5.** New regulations governing the outsides salesperson exemption became effective on August 23, 2004. All references to the Code of Federal Regulations refer to the 2004 edition which contains the pre-amendment provisions in effect at the time Miranda performed the work at issue in this case. *See Palmieri v. Nynex Long Distance Co.,* 437 F.3d 111, 115 (1st Cir.2006) (applying pre-amend-

(a) Who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business in:

(1) Making sales within the meaning of section 3(k) of the Act, or

(2) Obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

(b) Whose hours of work of a nature other than that described in paragraph (a)(1) or (2) of this section do not exceed 20 percent of the hours worked in the workweek by nonexempt employees of the employer: Provided, That work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall not be regarded as nonexempt work.

29 C.F.R. § 541.5 (2004).

■ In the present case, the dispositive inquiry concerns the subsection (a)(1) of the test.[6] The parties do not contest that Miranda was customarily and regularly engaged in work away from his employer's place of business. Rather, the parties' disputes focuses specifically on whether Ferrero employed Miranda for the purpose of making sales. Ferrero contends that Miranda's deposition testimony demonstrates that his primary duty at the company was to make sales to clients within his assigned sales route. Conversely, Miranda argues that he was a route driver who was responsible for delivering product and any sales activity was incidental to his primary function.[7]

As noted in the Magistrate Judge's Report and Recommendation, an additional regulation promulgated by the Secretary of Labor stresses the importance of considering the content of the job as a whole rather than relying on its title or designation when considering the applicability of the outside salesperson exemption. *See* 29 C.F.R. § 541.505(b) (2004). Section

---

ment regulation because plaintiff performed all work at issue prior to August 23, 2004).

6. Subsection (a)(2) does not apply in this case because Miranda engaged in neither obtaining orders for services nor obtaining orders for the use of facilities. His transactions involved the delivery of tangible goods. *See* 29 C.F.R. § 541.501 (2004). Subsection (b) is also not dispositive in this case. Ferrero argues that the delivery, merchandising, collection, and other tasks Miranda performed were "incidental to and in conjunction with" his outside sales. Miranda does not directly contest this assertion. Rather, he argues that he was not engaged in outside sales at all. If Miranda successfully argues he was not making sales, then the analysis of Subsection (b) becomes irrelevant. If Ferrero successfully argues Miranda was making sales, then his delivery, merchandising, collection and other tasks would all be deemed "incidental to and in conjunction with" his outside sales and thus nonexempt. *See Ackerman v. Coca–Cola Enters., Inc.,* 179 F.3d 1260, 1266–68 (10th Cir.1999) (holding plaintiffs' merchandising tasks were "incidental to and in conjunction with" sales because plaintiffs actually consummated sales at locations where they performed such tasks).

7. Miranda argues that he does not qualify as an exempt salesperson, in part, because he does not meet the requirement of exercising discretion and independent judgment. In making this assertion, Miranda erroneously relies upon a case in which the First Circuit Court of Appeals applied the administrative professional exemption, not the outside salesperson exemption. *See Reich v. John Alden Life In. Co.,* 126 F.3d 1, 7–8 (1st Cir.1997) (setting forth administrative exemption). In contrast to the administrative professional exemption, the outside salesperson exemption contains no explicit requirement that the employee exercise independent judgment and discretion to qualify for exemption status. *Compare,* 29 C.F.R. § 541.2 (2004) (administrative professional exemption), *with* 29 C.F.R. § 541.5 (2004) (outside salesperson exemption).

541.505 applies to "drivers salesmen"— drivers who, in servicing their route, perform both delivery and sales functions. The regulation provides that "all the facts bearing on the content of the job as a whole must be scrutinized to determine whether such an employee is really employed for the purpose of making sales rather than for the service and delivery duties which he performs." *Id.* Additionally, the regulation states, "[an] employee may qualify as an employee employed in the capacity of an outside salesman if, and only if, the facts clearly indicate that he is employed for the purpose of making sales. . . ." *Id.*

Subsection (c) of the regulation directly addresses a problem presented in this case, namely a driver who regularly calls on established customers delivering the employer's products at each call. According the regulation, drivers engage in sales when:

> [T]hey actually obtain or solicit, at the stops on their routes, orders for their employer's products from persons who have authority to commit the customer for purchases. A driver who calls on new prospects for customers along his route and attempts to convince them of the desirability of accepting regular delivery of goods is likewise engaged in sales activity and is making sales to those from whom he obtains a commitment. Also, a driver salesman calling on established customers on his route, carrying an assortment of the articles which his employer sells, may be making sales by persuading regular customers to accept delivery of increased amounts of goods or of new products, even though the initial sales or agreement for delivery of the employer's products may have been made by someone else.

29 C.F.R. § 541.505(c) (2004). Conversely, the regulation establishes that a driver is not making sales when:

> [H]e delivers orders to customers to whom he did not make the initial sale in amounts which are exactly or approximately prearranged by customer or contractual arrangement or in amounts specified by the customer and not significantly affected by solicitations of the customer by the delivering driver. Making such deliveries, as well as recurring deliveries the amounts of which are determined by the volume of sales by the customer since the previous delivery rather than by any sales effort of the driver, do not qualify the driver as an outside salesman nor are such deliveries and the work incident thereto directly to the making or soliciting of the sales by the driver so as to be considered exempt work.

*Id.; see also Skipper v. Superior Dairies, Inc.*, 512 F.2d 409, 413–16 (5th Cir.1975); *Hodgson v. Klages Coal & Ice Co.*, 435 F.2d 377, 380–84 (6th Cir.1970) (interpreting and applying "driver salesman" regulation).

These provisions cover the activities of the employee presently before this court. Miranda provided detailed testimony regarding the day-to-day tasks he performed. When Miranda began his employment at Ferrero, Guadalupe, Jr. provided him with a list of clients and quantities those clients typically needed. Miranda played no role in the original solicitation of orders from these clients. He used the list to determine how much product he should carry in his truck in order to satisfy his client's needs. Ferrero does not dispute Miranda's testimony that he carried on his truck only the amount of product he estimated would satisfy his client's needs. Any fluctuations in the quantity delivered to a

client resulted from a deviation in the client's needs rather than from any sales efforts made by Miranda. With respect to certain clients, other Ferrero employees coordinated sales events, obtained orders, or made arrangements for deliveries. Miranda did no more than complete the actual delivery of the product and accommodate the merchandise. Again, purchases made by such clients clearly were not affected by any sales efforts by Miranda.

Unlike the typical driver who is "making sales," Miranda generally made no attempt to persuade clients to purchase new products or additional quantities of pre-established products. He testified that it was not his job to do so. He only offered new products, special offers, and discounts when instructed to do so his supervisor. Miranda did not even have the authority to deliver additional products to certain large clients without his supervisor's approval.

In contrast to the driver who is "making sales," Miranda also did not call on new prospects for customers along his route and attempt to convince them of the desirability of accepting delivery of Ferrero's products. He only went to a new customer when he was told by his supervisor to do so. Miranda's job description lists as one of his duties "[c]ontacting new customers, visiting them, and making a presentation of the complete line of products distributed by Ferrero Caribe." Miranda testified, however, that this was not done. Nowhere in its statement of facts or memorandum of law does Ferrero contest this portion of Miranda's testimony. · Nor does Ferrero allege that the Miranda's failure to independently solicit new customers constituted neglect of his job duties. Thus, the facts as presented reveal that

Miranda was not responsible for independently obtaining new customers on his route.

Ferrero bears the burden of proving that Miranda falls plainly and unmistakably within the outside salesperson exemption. In evaluating Ferrero's contention that Miranda was an outside salesperson, the court must consider the content of his job as a whole rather than solely relying on a title or designation. It is clear, from a review of the undisputed facts, that the position described in the Ferrero job description differed significantly from the job Miranda actually performed on a daily basis. Applying the regulations to Miranda's job as actually performed, the court concludes that Ferrero has failed to prove that Miranda falls plainly and unmistakably within the outside salesperson exemption

 An examination of the factors culled from the case law of other courts also reveals that Ferrero has not demonstrated that Miranda falls plainly and unmistakably within the outside salesperson exemption. After a thorough inquiry, this court can find no case in which the First Circuit or the District of Puerto Rico has applied the Secretary's regulations or had occasion to consider the specific factors which influence the determination of an employee's status as an outside salesperson. Other federal district courts, however, have identified certain factors probative of an employee's status. *See Nielsen v. Devry, Inc.,* 302 F.Supp.2d 747, 756 (W.D.Mich.2003); *Fields v. AOL Time Warner, Inc.,* 261 F.Supp.2d 971, 974 (W.D.Tenn.2003). · Factors indicative of sales relatedness include: (1) whether the position was advertised as a sales position;[8] (2) whether the employee received

8. An employee is more likely to be categorized as a sales person if his position was

advertised as a sales position and the employer recruited and hired him based on his sales

commission-based compensation; (3) whether the employee was hired and denominated as a salesperson; (4) whether the employee received specialized sales training; (5) whether the employer required the employee to solicit new business; and (6) whether the employment arrangement was characterized by a lack of direct or constant supervision. *See Palmieri v. Nynex Long Distance Co.,* No. Civ. 04–138, 2005 WL 767170, at \*12 (D.Me. Mar. 28, 2005); *Nielsen,* 302 F.Supp.2d at 756; *Fields,* 261 F Supp.2d at 974. None of the relevant factors can be considered in isolation. *See Nielsen,* 302 F.Supp.2d at 756. Moreover, in applying the regulation and factors, the court must look beyond labels and job descriptions and inquire into the specifics of the actual tasks performed. *Id.*

■ Ferrero undeniably compensated Miranda on a commission basis. The amount of product he delivered, as reflected on daily invoices, dictated the precise amount of his compensation. Typically, compensation based on commissions supports a conclusion that an employed is engaged in sales. *See Nielsen,* 302 F.Supp.2d at 756. A commission-based compensation structure, however, does not require a finding that the employee does sales work. *See Skipper,* 512 F.2d at 414 (classifying as nonexempt employee whose compensation decreased if he delivered less product to customers). Rather, this court must consider Miranda's compensation structure in conjunction with the overall character of his job and the tasks he performed on a daily basis.

■ Miranda's job title, Direct Delivery Sales Person, and the job description he signed denominated him as a salesper-

son. A plaintiff's formal job title, however, is not dispositive. *See Klages Coal,* 435 F.2d at 384 (concluding routemen's denomination as salesmen in collective bargaining agreement was inconclusive). Instead, the actual job duties and tasks an employee performs are dispositive. *See Nielsen,* 302 F.Supp.2d at 756–57 (quoting *Fields,* 261 F.Supp.2d at 975). Miranda testified that he was not responsible for many of the sales-related duties listed in the job description, including contacting new clients, presenting Ferrero's product line to existing and new clients, negotiating better product placement in clients' stores, and complying with a sales quota. Additionally, Miranda's job title indicates that Miranda was also primarily responsible for delivering products. Such facts do not clearly indicate that Ferrero employed Miranda for the purpose of making sales.

Even assuming that Miranda's compensation structure, job title, and job description support a finding that he was an outside salesperson, consideration of the final three factors highlights the flaws in Ferrero's argument that Miranda was an outside salesperson. In this case, Ferrero offers no evidence that it provided any sales training to Miranda. In fact, the only evidence in the record regarding training reveals that Miranda attended approximately one week of training when he began his Ferrero employment. During this training, Guadalupe, Jr. provided Miranda with a list identifying the clients in his area and the amount of product they customarily needed, taught Miranda how to place merchandise, and discussed the fact that Miranda would often have to wait at a client's place of business until the client was prepared to accept delivery.

experience and abilities. *See Nielsen,* 302 F.Supp.2d at 756. In the present case, the records includes no evidence regarding Ferrero's recruiting and hiring process. Thus, con-

sideration of this factor does not aid the court in determining whether Miranda filled a sales position.

This training falls far short of the specialized sales training other courts have held to indicate that an employer hired an employee for the purpose of making sales. *See Nielsen,* 302 F.Supp.2d at 757 (detailing extensive and ongoing training in "the art of sales"); *Fields,* 261 F.Supp.2d at 975 (noting employees received training in products and sales techniques); *Hodgson v. Krispy Kreme Doughnut Co.,* 346 F.Supp. 1102, 1106–07 (M.D.N.C.1972) (describing training which included acquainting employee with content of sales job, products to be sold, production quality standards and methods, how to handle products, methods of servicing established customers, tactics to increase sales to established customers and gain new business, and company's "undersell" sales methods).

Generally, Miranda delivered products to established customers based on those clients' needs rather than on his efforts to create new business. Ferrero gave him no sales quota. He simply delivered that amount of product a client told him to leave. He only offered new products when told by his supervisor to do so. Additionally, Miranda did not independently contact potential new customers along his route. He only met with a new client when his supervisor instructed him to do so. Based on these facts, it cannot be said that Miranda's regular job was to convince clients to purchase additional merchandise or open new accounts. *See Klages Coal,* 435 F.2d at 383–84 (holding routemen did not solicit additional shelf space or call on potential new clients with sufficient regularity and frequency to justify classifying them as outside salesmen). Miranda's job contrasts with the tasks performed by plaintiffs other courts have designated as exempt outside salespersons. The plaintiffs in *Krispy Kreme* were responsible for obtaining new customers, developing additional sales to established customers, and building a special order business. *See Krispy Kreme,* 346 F.Supp. at 1104. None of the transactions at issue involved purchases in quantities exactly or approximately prearranged. *Id.* at 1105. Krispy Kreme required each salesman to obtain better display space in order to increase sales. *Id.* Each salesman was expected to produce an annual rate of growth in regular customers and volume of sales of eight to ten percent. *Id.* at 1106. The employer in *Nielsen* expected its sales employees to generate a majority of their own leads and to meet sales quotas. *Nielsen,* 302 F.Supp.2d at 758. The *Fields* plaintiffs were responsible for soliciting new business and received counseling when they did not meet sales quotas. *Fields,* 261 F.Supp.2d at 975. The *Palmieri* court acknowledged that the plaintiff-employee was precluded from seeking out new clients but was still responsible for generating new business because his employer expected him to generate new sales. *Palmieri,* 2005 WL 767170, at *13 (discussing employers repeated increases to employee's sales quota and expectation that employee generate increased sales from assigned clients). Based on the record presented in support of its summary judgment motion, Ferrero has not clearly indicated that it required Miranda to independently solicit new business.

Ferrero did not physically supervise Miranda's work while be was on his route. He took his lunch break when he chose to. Despite minimal physical supervision, Ferrero did require Miranda to notify the company daily of the hours he worked and to submit daily paperwork. This level of supervision alone supports a conclusion that Miranda worked as an outside sales person. *See Nielsen,* 302 F.Supp.2d at 758 (classifying as exempt employees who set their own start time, work hours, and

number of hours even though they met daily with supervisor); *Fields,* 261 F.Supp.2d at 975 (noting exempt salespersons set their own schedule and planned their own work day activities); *Krispy Kreme,* 346 F.Supp. at 1104–06 (concluding plaintiff who planned daily schedule and went about daily tasks with no supervision qualified as outside salesperson even though employer set quotas and benchmarks and required regular reports). Ferrero's supervision of Miranda, however, went well beyond this level. Miranda's supervisor had to pre-approve his weekly delivery schedule. Additionally, supervisory authorization was required before a change to the schedule could be made. Miranda could not deliver new products or solicit new customers unless his supervisor instructed or pre-authorized him to do so. This type of supervision differs significantly from the supervision imposed upon employees deemed exempt by other courts.

Although some of the case law factors may support Ferrero's position, the content of Miranda's job as a whole does not support a finding that Miranda was employed for the purpose of making sales. The cumulative effect of the case law factors is not sufficient to demonstrate that Miranda comes plainly and mistakably within the outside salesperson exemption.

Based on the evidence in the record as set forth in the light most favorable to Miranda, a reasonable factfinder could conclude that Miranda was not an outside salesman. It appears from the record that Miranda was not the type of individual salesman who could earn as much or a little as his ambition and ability dictated. Thus, Ferrero has failed to satisfy its burden to show that Miranda plainly and unmistakably satisfied the terms and spirit of the outside salesperson exemption. Ferrero's motion for summary judgment on Mi-

randa's FLSA claim is therefore **DENIED.**

## IV. Puerto Rico Law No. 379

Miranda also asserts an claim seeking compensation for work performed during overtime and mealtime under Puerto Rico Law No. 379. Ferrero contends that Miranda was exempt from the provisions of Law No. 379 because he qualified as either a "traveling agent" or a "peddler."

Law No. 379 defines "employee" as "every employee, workman, day laborer, artisan, laborer, clerk, shop clerk and every person employed for wages, salary, day wages, or any other form of compensation in any occupation, establishment, business, or industry, excepting traveling agents and peddlers." P.R. Laws Ann. tit 29, § 288. The act defines "traveling agents" as:

> [T]hose employees that exercise the function of traveling salesmen and whose work consists of carrying out transactions involving the sale of products, services, or any other tangible or intangible goods in behalf of an employer, whether or not he intervenes personally in the distribution or delivery of the product, service or goods, including any work or service incidental or related to the main sales activity. Usually, these people work outside of headquarters; the do not return to it daily; nobody has the daily supervision of their activities once they go out an sell; they use their own discretion as to the effort and time they should devote to their work, and the very nature of their work prevents the determination of real and effective hours worked every day.

*Id.* Law No. 379 goes on to define "peddlers" as:

> Those employees who are engaged in the sale, offering for sale, the requesting, collection or distribution of any article, product or merchandise, or publicity

material, in the street, in any public place, or from door to door, without the employer having any control over the hours of work it will take such employee to perform such activities outside the employer's establishment.

*Id.*

In determining whether Miranda qualifies as an exempt traveling agent or peddler, the court must consider the following: "(a) that traveling salesmen carry all their work without direct supervision; (b) that they are the only ones that know their customers and the action which to the best of their judgment ought to be taken in maintaining and increasing said customers; [and] (c) that they render their services outside the office of the employer." *Maldonado v. IBM Corp.*, 56 F.R.D. 452, 455 (D.P.R.1972). The court must also keep in mind the "[t]he true reason for the existence of the 'outside salesman' exemption," namely "that due to the inherent nature of the salesman's function, the employer has no way of knowing the exact number of hours worked per day." *Id.* Finally, at least one court has acknowledged that Law No. 379 provides more extensive coverage for employees that the FLSA. While an employee's job status may not entitle him to overtime under the FLSA, it may entitle him to overtime compensation under Puerto Rican law. *See Brennan v. New Jersey*, 364 F.Supp. 156, 159–60 (D.N.J.1973).

Based on the uncontested facts presented in this case, Ferrero has not shown that Miranda worked as a traveling agent or a peddler. Ferrero maintained a significant level of supervision over Miranda's daily activities; the company required him to obtain supervisory authorization before establishing or changing a weekly schedule, visiting potential new clients, offering new products to established customers, delivering new products when requested by certain large customers, and delivering merchandise to a client who owed money, among other tasks. The company also required Miranda report on a daily basis the hours he worked, the customers he visited, and other information. With this information, Ferrero could know the number of hours Miranda worked per day. Additionally, Miranda was not the only Ferrero employee familiar with some of his clients and their needs. Miranda testified that Guadalupe, Sr. and Alonso had direct sales-related contact with some of his customers. Moreover, Miranda did not exercise judgment in maintaining and increasing sales to his established customers. He delivered products according to the client's needs and offered new products, special offers, and discounts pursuant to his supervisor's instructions.

In light of these facts, Ferrero's motion for summary judgment on Miranda's Puerto Rico Law No. 379 claim is **DENIED**.

## V. Conclusion

At this stage of the proceeding, mindful of our duty to draw all reasonable inferences in Miranda's favor, the court concludes that Ferrero has failed to present sufficient evidence to establish that Miranda worked as an exempt outside salesperson. In light of the foregoing discussion, Ferrero's motion for summary judgment (Docket No.37) is **DENIED**.

**SO ORDERED.**