**Jeremy HAMM, et al., Individually and on behalf of All Others Similarly Situated, Plaintiffs,**

**v.**

**SOUTHERN OHIO MEDICAL CENTER, Defendant.**

**Case No. 1:16–cv–935**

United States District Court, S.D. Ohio, Western Division.

Signed 03/10/2017

Carrie J. Dyer, Gregory R. Mansell, Mansell Law LLC, Columbus, OH, for Plaintiffs.

S. Mark Klyza, Caroline A. Spangler, The Kullman Firm, New Orleans, LA, for Defendant.

## ORDER:

(1) GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND NOTICE (Doc. 2); (2) GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT (Doc. 14); (3) GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL EVIDENCE (Doc. 15); (4) DENYING DEFENDANT'S MOTION TO STRIKE (Doc. 16); AND (5) GRANTING DEFENDANT'S MOTION FOR LEAVE TO FILE A SUR–REPLY (Doc. 17)

Timothy S. Black, United States District Judge

## I. INTRODUCTION

Plaintiff, a security officer at Southern Ohio Medical Center ("Defendant" or "SOMC"), filed this action alleging that his employer violated the Fair Labor Standards Act ("FLSA") through enforcement of its policy of automatically deducting a 30 minute meal period from each security officer's shift. This case is now before the Court for consideration of Plaintiff's motion for conditional certification ("Motion for Conditional Certification") (Doc. 2) and the parties' responsive memoranda (Docs. 11, 13).

Also before the Court are several procedural motions the Court must resolve prior to ruling on the Motion for Conditional Certification, including Plaintiff's motion for leave to amend his Complaint (Doc. 14), Plaintiff's motion for leave to file supplemental evidence in support of the Motion for Conditional Certification (Doc. 15), Defendant's motion to strike ("Motion to Strike") (Doc. 16), and Defendant's motion for leave to file a sur-reply (Doc. 17).

For the reasons set forth below, the Court GRANTS Plaintiff's Motion for Conditional Certification (Doc. 2), Plaintiff's motion for leave to file an amended complaint (Doc. 14), Plaintiff's motion for leave to file supplemental evidence (Doc. 15), and Defendant's motion for leave to file a sur-reply (Doc. 17).

The Court DENIES the Motion to Strike (Doc. 16), but will disregard portions of declarations that contain inadmissible statements.

## II. BACKGROUND

On September 19, 2016, Plaintiff filed the Complaint. The Complaint alleges Plaintiff is employed by Defendant as a security officer, Defendant requires security officers to work four 10.5 hour shifts per week, and Defendant automatically deducts a 30 minute meal period from each security officer's shift. (Doc. 1 at ¶¶ 10–11, 19, 21). The Complaint alleges security officers are required to perform work for Defendant during their meal period, and as a result, Plaintiff and other security officers work more than the 40 hours per week for which they are paid. (Id. at ¶¶ 20, 22). The Complaint asserts Defendant's enforcement of its automatic meal deduction policy violates the FLSA. (Id. at ¶ 26).

The FLSA allows plaintiffs to assert violations in federal court on behalf of themselves and others "similarly situated." 29 U.S.C. § 219(b). Accordingly, on September 27, 2019, Plaintiff filed the Motion for Conditional Certification, which asks the Court to certify this case as a collective action and for authorization to send notice of Plaintiff's FLSA claims to "All current and former Security Officers employed by defendant who, between September 19, 2016 and the present, worked more than forty hours in any workweek but were not properly compensated for all overtime hours worked under the FLSA because of

Defendant's automatic meal deduction policy." (Doc. 2 at 4). The Motion for Conditional Certification is supported by the first of Plaintiff's two declarations ("First Hamm Declaration") (Doc. 2–2).

On January 13, 2017, Defendant filed an opposition to the Motion for Conditional Certification ("Opposition") (Doc. 11).

On February 1, 2017, Plaintiff filed a reply memorandum ("Reply") (Doc. 13). The Reply is supported by Plaintiff's second declaration ("Second Hamm Declaration") (Doc. 13–1).

Since the briefing period concluded, Plaintiff has moved for leave to amend his Complaint (Doc. 14) and for leave to file supplemental evidence in support of the Motion for Conditional Certification (Doc. 15). Defendant has moved for leave to file a sur-reply (Doc. 17) and to strike portions of Plaintiff's evidence (Doc. 16).

The Court will address these procedural motions first because their resolution dictates what evidence the Court will and will not consider in deciding the Motion for Conditional Certification.

## III. PROCEDURAL MOTIONS

### A. Plaintiff's Motion for Leave to Amend the Complaint.

On February 7, 2017, Plaintiff filed a motion seeking leave to amend his Complaint in order to add David Simones, a former security guard at SOMC, as an additional named plaintiff. (Doc. 14). Plaintiff's proposed amended complaint includes a declaration from Mr. Simones (the "Simones Declaration").

At this juncture, Plaintiff may amend his Complaint "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Court should "freely give leave when justice so requires." *Id.*

Here, Plaintiff's motion for leave states that Defendant opposes the motion. (Doc. 14 at 1). However, counsel for Defendant has since advised the Court that it does not oppose the motion, and in any event, the time to do so has passed. In light of Defendant's acquiescence, and in the interest of hearing Mr. Simones' claims simultaneously with Plaintiffs identical claims as a matter of judicial economy, the Court **GRANTS** Plaintiff's motion for leave to amend his Complaint (Doc. 14).

### B. Plaintiff's Motion for Leave to File Supplemental Evidence.

On February 9, 2017, Plaintiff filed a motion for leave to include the Simones Declaration as additional evidence in support of his Motion for Conditional Certification. (Doc. 15). Plaintiff claims Mr. Simones did not contact him until after the Motion for Conditional Certification was already fully briefed. (Doc. 15 at 3–5).

Defendant opposes this motion. Defendant argues the Court should not consider the Simones Declaration in ruling on the Motion for Conditional Certification because it is inadmissible and because Plaintiff did not confer with Defendant prior to seeking leave pursuant to S.D. Ohio Civ. R. 7.3. (Doc. 18 at 1).

Plaintiff's motion for leave is well-taken. The allegations in the Simones Declaration (Doc. 15–1) are relevant to the issue of whether this case should initially proceed as a collective action. Accordingly, the Court will consider them in resolving Plaintiff's Motion for Conditional Certification.

The Court notes Defendant's objections but finds Defendant will not be prejudiced for two reasons. First, to the extent Defendant objects to the admissibility of the Simones Declaration, the Court will evaluate those arguments when considering Defendant's Motion to Strike (Doc. 16). Second, as explained below, the Court will allow Defendant to file a sur-reply to ad-

dress the merits of the Simones Declaration.

For these reasons, the Court **GRANTS** Plaintiff's motion for leave to file additional evidence (Doc. 15) and will consider the Simones Declaration while deciding the Motion for Conditional Certification.

### C. Defendant's Motion for Leave to file a Sur–Reply.

Pursuant to this Court's local rules, written motions shall be decided after consideration of the motion, a memorandum in opposition, and a reply memorandum. S.D. Ohio Civ. R. 7.2(a)(1)–(2). No additional memoranda are permitted except "upon leave of court for good cause shown." *Id.* at 7.2(a)(2).

On February 9, 2017, Defendant moved for leave to file a sur-reply. (Doc. 17). Defendant argues it requires a sur-reply in order to address the Second Hamm Declaration and the Simones Declaration. (Doc. 17 at 1). Plaintiff does not oppose Defendant's motion.

The Court finds Defendant has shown good cause in support of its motion to file a sur-reply, namely, that this additional memorandum is necessary in order to afford Defendant a chance to address all of the evidence submitted by Plaintiff. Accordingly, the Court **GRANTS** Defendant's motion for leave to file a sur-reply (Doc. 17) and the sur-reply attached to the motion ("Sur–Reply") (Doc. 17–1) is hereby considered filed of record and is considered by the Court in fashioning this Order.

### D. Defendant's Motion to Strike.

▋ On February 9, 2017, Defendant filed the Motion to Strike (Doc. 16), which asks the Court to strike the First Hamm Declaration, the Second Hamm Declaration, and the Simones Declaration for a number of reasons, including because they are procedurally improper, contain inadmissible hearsay, include contradictory statements, and contain statements in which the declarant lacks personal knowledge.

The Court **DENIES** the Motion to Strike (Doc. 16). Rather than striking the materials challenged by Defendant, the appropriate method for handling these alleged infirmities is to simply disregard any portions of the declarations the Court deems inadmissible. *See Sisson v. Ohio-Health Corp.*, No. 2:13–cv–0517, 2013 WL 6049028 at *3, 2013 U.S. Dist. LEXIS 162464 at *8 (S.D. Ohio, Nov. 14, 2013) (Frost, J). Accordingly, the Court will determine which, if any, portions of the challenged declarations it will disregard while considering the Motion for Conditional Certification. *Id.*

First, the Motion to Strike argues the following allegations from the First Hamm Declaration are inadmissible:

13. Security Officers are not paid for the 30–minute meal periods, despite the fact that we continue to perform substantial duties for SOMC during our meal periods.

. . . .

17. For the previous three years, Security Officers and I have not been paid overtime compensation for all hours worked in a workweek over 40 due to the auto-deducted 30–minute meal periods, during which we continue to perform substantial work.

(Doc. 16–1 at 4) (citing Doc. 2–2 at ¶¶ 13, 17). Defendant argues these statements are "unsupported by any corroborating evidence." (*Id.*)

This Court does not agree. The Court does not weigh evidence or evaluate the merits of the parties' claims at the conditional certification stage.[1] Accordingly,

---

1. *See* Part IV, *infra.*

there is no need for statements to be made with specificity or to be supported by corroborating evidence.

Defendant's argument that these statements are "inadmissible" is equally unavailing. Generally, witnesses may testify as to matters of which they have personal knowledge. *See* Fed. R. Evid. 602. Plaintiff's declarations suggest he has firsthand knowledge that SOMC security officers worked hours for which they were not paid as a result of Defendant's enforcement of the automatic meal deduction. When these paragraphs are read in conjunction with paragraphs 13[2] and 14[3] of the Second Hamm Declaration (Doc. 15-1), it can be inferred that Plaintiff gained this knowledge from his observation of other officers and their work practices. *See Sisson*, 2013 WL 6049028 at *3-5, 2013 U.S. Dist. LEXIS 162464 at **9-14 (rejecting defendant's argument that a witness lacked personal knowledge of her declaration that "employees worked off the clock" because "it can be inferred [the declarant] gained her knowledge from her observation of employees and their work practices").

Second, the Motion to Strike argues that paragraphs 13 and 14 of the First Hamm Declaration contradict the following statements from the Second Hamm Declaration:

> 14. The only training I have received on lunch breaks and cancellations is being told that if we miss an entire lunch break, we could submit a cancellation.
> 15. On occasion, I have submitted a "no lunch" report when I had to work through my entire lunch break and was not able to take a break at all.

(Doc. 16-1 at 4) (citing Doc. 15-1 ¶¶ 14-15).

Defendant's argument is not well-taken. The Court does not find any inconsistencies between Plaintiff's assertion that he and other security officers were not paid for all hours worked as a result of Defendant's automatic meal deduction and Plaintiff's assertion that he occasionally submitted no-lunch reports. Plaintiff is not required to show that he and other security officers worked through every lunch in order to prove an FLSA violation or to support conditional certification. *See Gessele v. Jack in the Box, Inc.*, No. 3:10-cv-960, 2013 WL 1326563 at *24, 2013 U.S. Dist. LEXIS 51941 at *70 (D. Ore. Jan 28, 2013) (finding statements that employees "occasionally," "sometimes" and "a whole lot of times" were forced to return early from lunch sufficient to warrant conditional certification).

Accordingly, the Court will consider paragraphs 13 and 17 of the First Hamm Declaration (Doc. 2-2) and paragraphs 14 and 15 of the Second Hamm Declaration (Doc. 15-1).

Third, the Motion to Strike argues that the Second Hamm Declaration and the Simones Declaration are untimely because they were filed after Defendant filed its Opposition brief. (Doc. 16-1 at 2-3). Defendant argues that it has not had a chance to respond to this newly-filed evidence, and accordingly, the Court should strike both declarations as well as portions of Plaintiff's Reply (Doc. 13) which rely on them. (*Id.* at 3-4).

**2.** "I have personally observed other Security Officers eating lunch in the employee office as well. I have witnessed Security Officers just sitting down to take a lunch break when they receive a call on their radios. I have witnessed Security Officers stop eating their lunch or quickly grab what is left of their lunch and immediately leave to respond to a call." (Doc. 13-1, P13).

**3.** "The only training I have received on lunch breaks and cancellations is being told that if we miss an entire lunch break, we could submit a cancellation." (Doc. 13-1, P14).

This Court does not agree. The Court granted Defendant leave to file its Sur-Reply (Doc. 17–1) for the purpose of affording Defendant the opportunity to respond to both the Simones Declaration and the Second Hamm Declaration. Accordingly, Defendant will not be prejudiced by the Court's consideration of these declarations in deciding the Motion for Conditional Certification. While Defendant argues it did not have time to "secure additional declarations" to rebut the assertions in the Simones Declaration and the Second Hamm Declaration (Doc. 21 at 2–3), that argument fails because the Court would not have weighed any such competing declarations against Plaintiff's evidence at the conditional certification stage.[4]

■ Fourth, the Motion to Strike argues that the following statements in the Second Hamm Declaration contain inadmissible hearsay:

19. On several occasions since the filing of this lawsuit, I have talked with other Security Officers, who have informed me that they are afraid to lose their jobs if they go against the company. The same individuals have complained to me many times about not being paid for work performed during lunch. They have expressed concern that if they are retaliated against and lose this job, they won't be able to find a job that pays well.

. . . . .

21. I spoke with another Security Officer, Wayne Henson, who informed me that he and the other security guards spoke with SOMC's attorney. The attorney asked him to sign a written statement, but he declined to do so. Mr. Henson also stated that the company's attorney met with other Security Officers who also did not provide written statements.

22. I also spoke with Paul Manchester after he had met with the attorney. Mr. Manchester indicated to me that the questions were leading and did not allow him to elaborate. Mr. Manchester also indicated that his final written statement did not contain his answers to all the questions but, instead, only contained the answers which were beneficial to SOMC.

(Doc. 16–1 at 5) (citing Doc. 13–1 at ¶¶ 19, 21–22). The Motion to Strike takes issue with similar statements in the Simones Declaration:

15. Other Security Officers and I were not happy about this policy, and we did not believe it was fair to refuse to compensate us if we worked through lunch.

. . . .

22. It was understood among Security Officers that we are strongly discouraged from submitting "no lunch" reports—even when we spend our lunch break primarily for the benefit of SOMC or when we get no opportunity to take a lunch at all.

. . . .

24. I brought up the issue of not getting properly paid for our lunch breaks to my co-workers—other Security Officers—on multiple occasions during my employment with SOMC.

25. Security Officers responded that they agreed this practice was unfair, and stated that they wanted to take some action to correct the situation. However, each time I brought up the idea of contacting a lawyer or taking some other action, other Security Officers indicated they weren't actually interested in pursuing any action because they were afraid to lose their jobs.

26. Security Officers have expressed concern to me that if they agreed to

---

4. See Part IV, infra.

pursue any action to recover what they believe are owed for work performed during their lunch breaks, they will be retaliated against and lose their only option of a good-paying job.

27. SOMC is one of a few major employers in the Portsmouth, OH area. Based on my experiences, there are very few, if any, jobs available for security officers that are comparable in pay and benefits to the security officer position at SOMC. As a result, security officers have indicated to me that they would rather work off the clock than be retaliated against and potentially lose their job.

(Doc. 16–1 at 5–6) (citing Doc. 15–1 at ¶¶15, 22, 24–27).

The Motion to Strike argues that these statements contain inadmissible hearsay offered as proof of the matter asserted, namely, that the declarations Defendant filed in support of its Opposition brief were coerced. (Doc. 16–1 at 5).

The Court agrees with Defendant that paragraphs 19, 21, and 22 of the Second Hamm Affidavit (Doc. 13–1), and paragraphs 15, 25, 26, and 27 of the Simones Declaration (Doc. 15–1), contain inadmissible hearsay.[5] Accordingly, the Court will not consider them.

 Fifth, the Motion to Strike argues that Mr. Simones does not have personal knowledge of statements he alleges were made by Joe McKinnon, a manager at SOMC:

9. In or around 2007, Joe McKinnon became the manager of Security Officers. (Security Officers reported directly to Sergeants, who reported to Mr. McKinnon).

10. After Mr. McKinnon became a manager, he held a meeting with all Security Officers to address overtime pay.

11. Mr. McKinnon stated that he noticed that Security Officers were consistently reporting "no lunch" on their time sheets, indicating that they worked through their lunch and requested to be paid for the automatically-deducted 30 minute lunch breaks. Mr. McKinnon stated that this practice was resulting in SOMC having to pay too much overtime.

12. Mr. McKinnon stated that if Security Officers have time [sic] sit down and eat at all, then we are considered to have taken a full lunch break.

13. Mr. McKinnon stated that if we desired to mark "no lunch" on any shift, we first needed to email him and explain why we didn't take a lunch that day. Mr. McKinnon stated that he would then evaluate our request for no lunch, and either approve it or disapprove it based on the information we provided to him.

14. Mr. McKinnon also stated that if we do get a chance to eat lunch, we should not leave SOMC premises in case we are needed to respond to a call.

(Doc. 16–1 at 5–6) (citing Doc. 15–1 at ¶¶ 9–14).

The Motion to Strike argues that Mr. Simones does not have personal knowledge of Mr. McKinnon's statements because Mr. Simones does not specifically attest that he attended the meeting. (Doc. 16–1 at 5). The Court disagrees. Mr. Simones asserts that Mr. McKinnon made these statements to "all" security officers in or around 2007. (Doc. 15–1 at ¶ 9). As Mr. Simones was employed as a security officer at SOMC from 2002 through 2015 (Doc. 15–1 at ¶ 3), the Court infers that Mr. Simones has personal knowledge of these statements.

To the extent the Motion to Strike seeks to exclude Mr. McKinnon's statements as

---

5. Paragraphs 22 and 24 of the Simones Declaration (Doc. 15–1) do not include or depend

on another party's out of court statement.

hearsay (Doc. 16–1 at 5–6), the Court finds that these statements are admissions of Defendant's agent and admissible as non-hearsay under Fed. R. Evid. 801(d)(2)(D). *See Harrison v. McDonald's Corp.*, 411 F.Supp.2d 862, 867 (S.D. Ohio 2005) (Holschuh, J) (employee's statement that a manager told him the defendant company manually reduced the number of hours employees reported working was admissible as an admission by a party opponent).

■ Fifth, the Motion to Strike argues that Mr. Simones lacks personal knowledge to make the following statements regarding other security officers:

16. Security Officers and I rarely receive uninterrupted lunches. I often ate my lunch while in my vehicle responding to calls or in the employee office on Main Campus while completing other tasks for SOMC.

. . . .

21. The only training I have received on lunch breaks and cancellations is being told that if we miss an <u>entire</u> lunch break, we could submit a cancellation. Security Officers received no training as to what constituted "interrupted lunches," "bona fide meal periods," or "substantial work."

22. It was understood among Security Officers that we are strongly discouraged from submitting "no lunch" reports—even when we spend our lunch break primarily for the benefit of SOMC or when we get no opportunity to take a lunch at all.

(Doc. 16–1 at 6) (citing Doc. 15–1 at ¶¶ 16, 21–22).

The Court finds these statements to be made upon Mr. Simones' personal knowledge and understanding of Defendant's employment practices and how they affect its employees. Courts have allowed these types of statements while considering a motion for conditional certification "if the plaintiff has gotten to know fellow employ-

ees, observed them during the course of their employment, and talked with them about employment practices governing their work." *See O'Neal v. Emery Fed. Credit Union*, No. 1:13–cv–22, 2013 WL 4013167 at *6-7, 2013 U.S. Dist. LEXIS 110383 at *21 (S.D. Ohio Aug. 6, 2013) (Dlott, J).

As to paragraph 16, the Court finds Mr. Simones has personal knowledge of his statement that other security officers rarely receive uninterrupted lunches because he states in paragraph 17 that he has observed security officers stop eating lunch in order to respond to calls. *See Sisson*, 2013 WL 6049028 at *3-5, 2013 U.S. Dist. LEXIS 162464 at **9–14 (witness had personal knowledge that "employees worked off the clock" because she observed employees working while not clocked in).

As to paragraphs 21 and 22, it can be inferred that Mr. Simones has personal knowledge of Defendant's policy on submission of "no lunch" reports and how that policy was understood by other security officers because Mr. Simones received the same instruction as other security officers regarding "no lunch" reports. (Doc. 15–1 at ¶¶ 10–15); *see Carter v. Jackson–Madison County Hosp. Dist.*, No. 1:10–cv–01155–JDB–egb, 2011 WL 1256625 at **14-17, 2011 U.S. Dist. LEXIS 35163 at **42–52 (W.D. Tenn. Mar. 31, 2011) (rejecting the argument that declarant lacked personal knowledge of, *inter alia*, her statement "[w]e are expected to eat without any changes in demands" because it was "reasonable to infer from the evidence submitted that [plaintiffs], as employees of [defendant] would have learned during the normal course of their employment how the company operates and what the companies policies were") (quoting *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 368 (E.D. Tenn. 2006)).

Accordingly, the Court will consider paragraphs 16, 21 and 22 of the Simones Affidavit.

## IV. MOTION FOR CONDITIONAL CERTIFICATION

Having decided what portions of the record the Court will and will not consider, the Court now proceeds to decide Plaintiff's Motion for Conditional Certification.

The FLSA allows employees, under certain circumstances, to collectively sue an employer to recover unpaid overtime compensation. *See* 29 U.S.C. § 219(b). The statute provides in part:

Any employer who violates the provisions of section 6 or section 7 of this Act shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.... An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id.* Accordingly, Section 216(b) establishes two requirements for a collective action: (1) the plaintiffs must be "similarly situated" and (2) all plaintiffs must signal in writing their affirmative consent to participate in the action. *Comer v. Wal–Mart Stores, Inc.,* 454 F.3d 544, 546 (6th Cir. 2006).

The Sixth Circuit has implicitly upheld a two-step procedure for determining whether an FLSA case should proceed as a collective action. *Hughes v. Gulf Interstate Field Servs., Inc.,* No. 2:14–cv–432, 2015 WL 4112312 at \*2, 2015 U.S. Dist. LEXIS 88205 at \*6 (S.D. Ohio July 7, 2015) (Sargus, J) (citing *In re HCR ManorCare, Inc.,* No. 11–3866, 2011 WL 7461073, 2011 U.S. App. LEXIS 26241 (6th Cir. Sept. 28, 2011)). First, in what is referred to as the "initial notice stage," the Court must determine whether to conditionally certify the collective class and whether notice of the lawsuit should be given to putative class members. *Swigart v. Fifth Third Bank,* 276 F.R.D. 210, 213 (S.D. Ohio 2011). At the second stage, the defendant may file a motion to decertify the class if appropriate to do so based on the individualized nature of the plaintiffs' claims. *Id.*

### A. Similarly Situated

At the first stage, which is the stage at issue here, plaintiffs must only make a "modest showing that they are similarly situated to the proposed class of employees." *Lewis v. Huntington Nat. Bank,* 789 F.Supp.2d 863, 867 (S.D. Ohio 2011) (Marbley, J). This standard is "fairly lenient" and "typically results in conditional certification." *Id.* (quoting *Comer,* 454 F.3d at 547). Ultimately, the issue of whether to grant conditional certification is in the district court's discretion. *Comer,* 454 F.3d at 546.

When considering a pre-discovery motion for conditional certification, the Court does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility. *Swigart,* 276 F.R.D. at 214. Requiring additional factual support, or weighing the defendant's competing factual assertions prior to discovery, would "intrude improperly into the merits of the action." *Lacy v. Reddy Elec. Co.,* No. 3:11–cv–52, 2011 WL 6149842 at \*3, 2011 U.S. Dist. LEXIS 142050 at \*8

(S.D. Ohio Dec. 9, 2011) (Rice, J) (citing *Murton v. Measurecomp LLC*, No. 1:07CV3127, 2008 WL 5725631 at *5, 2008 U.S. Dist. LEXIS 108060 at *16 (N.D. Ohio June 9, 2008)).

Although the FLSA does not define "similarly situated," the Sixth Circuit has found that employees are similarly situated if they "suffer from a single, FLSA-violating policy" or their claims are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Ford v. Carnegie Mgmt. Servs.*, No. 2:16–cv–18, 2016 WL 2729700 at *2, 2016 U.S. Dist. LEXIS 62276 at *5 (S.D. Ohio, May 11, 2016) (Jolson, MJ) (citing *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009)).

Plaintiff has submitted evidence that Defendant automatically deducts a 30 minute lunch break from each security officer's 10.5 hour shift (Doc. 2–2 at ¶ 2; Doc. 15–1 at ¶ 8), security officers are required to respond to every call received on their radio or phone during their lunch break (Doc. 2–2 at ¶ 14; Doc. 15–1 at ¶ 7), security officers occasionally have to stop eating lunch in order to respond to a call (Doc. 13–1 at ¶ 13; Doc. 15–1 at ¶ 17), but security officers are not paid for these uninterrupted lunches because Defendant has instructed its security guards they may only submit a "no lunch" report if they miss their entire lunch period (Doc. 13–1 at ¶¶ 14–16; Doc. 15–1 at ¶¶ 9–13). The Court finds Plaintiff has met his "modest" burden of showing that he is similarly situated to the proposed class.

█ Defendant presents four arguments to the contrary. First, Defendant argues that certification is not proper be-cause Plaintiff has not identified any other putative class members who wish to join this action. (Doc. 11 at 10–11). This Court does not agree. There is no requirement that a motion for conditional certification, at this stage of the litigation, be supported by affidavits of interest from potential plaintiffs. *See Creely v. HCR ManorCare, Inc.*, 789 F.Supp.2d 819, 840 (N.D. Ohio 2011) ("courts have not traditionally required a plaintiff seeking conditional certification to come forward with some threshold quantity of opt-in plaintiffs"); *Martin v. Psalms*, No. 2:10–cv–02532, 2011 WL 2882387 at *7-8, 2011 U.S. Dist. LEXIS 77245 at *23 (W.D. Tenn. July 15, 2011) (noting that the Sixth Circuit has neither required such a showing nor held such a showing is not required).

To the contrary, this Court has granted pre-discovery motions for conditional certification supported by only the declarations of named plaintiffs. *See Ford*, 2016 WL 2729700 at *1-4; 2016 U.S. Dist. LEXIS 62276 at **3–10 (granting motion for conditional certification supported by the named plaintiff's own declaration because it contained "sufficient evidence to make a modest showing that the potential class members are similarly situated"); *Lewis*, 789 F.Supp.2d at 868 (granting motion for conditional certification supported only by declarations from the two named plaintiffs); *see also Sisson*, 2013 WL 6049028 at *7, 2013 U.S. Dist. LEXIS 162464 at *20 (granting motion for conditional certification supported by a single witness declaration even though "Plaintiff has not identified any proposed plaintiffs by name or submitted affidavits from any potential plaintiffs.").

In any event, even if Plaintiff were required to submit evidence of interested parties, he would have met this burden by submitting the Simones Declaration.[6]

---

6. It is worth noting here that Defendant only employed approximately 20 security officers at a time (Doc. 1 at ¶ 12) and two of them— 10 percent of Defendant's workforce—filed declarations stating they were not paid overtime as a result of Defendant's enforcement of its automatic meal deduction policy. While Defendant spends much of its time arguing

Second, Defendant argues Plaintiff lacks personal knowledge sufficient to represent other security officers. (Doc. 11 at 12). This argument fails. Plaintiff's declarations state that he personally observed other security officers stop eating lunch in order to respond to calls in circumstances in which these security officers were trained to not submit a "no lunch" report. (*See* Doc. 2–2 at ¶¶ 11; Doc. 13–1 at ¶¶ 11, 14). These admissible portions of Plaintiff's declarations are evidence that he has personal knowledge of other security officers working off the clock.

Defendant, citing to declarations from other current employees attached to its Opposition brief, argues that Plaintiff was primarily stationed in a location at which he would not have been able to observe other security officers at lunch and has no way of knowing whether or not security officers were paid for missed lunches. (Doc. 11 at 12). This argument fails because the Court is not permitted to weigh the parties' competing evidence at this juncture. Balancing Defendant's evidence against Plaintiff's assertion of personal knowledge would require credibility and factual determinations improper at the conditional certification stage. *Myers v. Marietta Mem. Hosp.*, 201 F.Supp.3d 884, 893 (S.D. Ohio 2016) (Marbley, J).

Third, Defendant argues that Plaintiff cannot show an unlawful common plan or policy because automatic meal-break deductions are not *per se* unlawful, and Plaintiff does not have evidence that all security officers worked through lunch breaks or that Defendant knew its employees were not being properly compensated. (Doc. 11 at 13–14).

This argument relates to the merits of Plaintiff's claims and is not relevant at this stage of the proceedings. *See Heaps v. Safelite Solutions, LLC*, 2:10–cv–729, 2011 WL 1325207 at *4, 2011 U.S. Dist. LEXIS 40089 at *11 (S.D. Ohio Apr. 5, 2011) (Frost, J) (refusing to consider employer's argument that its policy was lawful because it was irrelevant to the issue of whether pre-discovery conditional certification was proper); *Gessle*, 2013 WL 1326563 at **22-25, 2013 U.S. Dist. LEXIS 51941 at **65–72 (rejecting employer's argument in opposition to conditional certification that automatic meal deductions are not *per se* illegal because "the inquiry at this first stage is 'not whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated ... with respect to their allegations that the law has been violated.'") (quoting *Brabazon v. Aurora Health Care, Inc.*, No. Civ. 10–714, 2011 WL 1131097 at *3, 2011 U.S. Dist. LEXIS 37057 at *8 (ED Wis. March 28, 2011)); *Camesi v. Univ. of Pittsburgh Med. Ctr.*, No. 09–85J, 2009 WL 1361265 at *3-4, 2009 U.S. Dist. LEXIS 40571 at **9–10 (W.D. Penn. May 14, 2009) ("assuming Defendants can, and ultimately will, demonstrate that the facts and circumstances surrounding [employer's automatic meal deduction] support a finding of bona fide meal period(s), this is not a determination that appropriately can be made at the conditional certification stage").

■ The Court acknowledges that automatic meal deduction policies are not *per se* unlawful. However, courts typically grant conditional certification when plain-

that statements from Plaintiff and Mr. Simones do not establish violations for *other* security officers, their testimony as to their own experiences would likely be sufficient to grant conditional certification and send notice to members of this manageable class who were subject to the same written and unwrit-

ten policies. *See Ford*, 2016 WL 2729700 at *4, 2016 U.S. Dist. LEXIS 62276 at *10 (conditional certification is warranted when there is "some evidence" demonstrating a "colorable basis that illegal pay practices and procedures are in place.") (internal quotation omitted).

tiffs present some evidence at the first stage that implementation of the automatic meal deduction has resulted in FLSA violations. *See Camesi*, 2009 WL 1361265 at *1–5, 2008 U.S. Dist. LEXIS 40571 at **5–16 (granting motion for conditional certification based on plaintiffs' allegations that they "often" worked more than 40 hours per week for which they were not compensated due to defendant's automatic meal deduction); *Brabazon*, 2011 WL 1131097 at **2–5, 2011 U.S. Dist. LEXIS 37057 at **6–15 (plaintiff's allegation that defendant failed to compensate employees who worked through unpaid meal breaks was sufficient to allow conditional certification because plaintiff "alleged more than just the existence of a common auto-deduction policy"); *Gessele*, 2013 WL 1326563at *24, 2013 U.S. Dist. LEXIS 51941 at *71 (granting motion for conditional certification when plaintiffs alleged they were called back early from their meal breaks "at least 'occasionally' "). Plaintiff has met this modest burden.

Finally, Defendant argues that certification is improper because this case will require an individualized factual inquiry into the circumstances of each uncompensated meal break. (Doc. 11 at 15–17). But according to the Sixth Circuit, "such a collection of individualized analysis is required of the district court." *O'Brien*, 575 F.3d at 584 (rejecting employer's argument that conditional certification was improper when it would require an individual analysis that examines the facts of each alleged violation). At the conditional certification stage, a plaintiff is only required to show that claims of the proposed class are unified by common theories of defendants' statutory violations, even if proofs of the theories are inevitably individualized and distinct. *Id.*, at 585.

Here, the claims of Plaintiff and the proposed class are unified by the common theory that Defendant's enforcement of its automatic meal deduction policy has violated the FLSA by causing Plaintiff and other potential class members to work hours for which they were not compensated. That is sufficient at this stage to justify conditional certification, even though proof of each violation will require an individual factual inquiry. *O'Brien*, 575 F.3d at 584. If discovery later shows the claims in this case to be so individualized as to render a collective action unmanageable, the defendant may move to decertify the collective action at the second stage of certification proceedings. *Petty v. Russell Cellular, Inc.*, No. 2:13–cv–1110, 2014 WL 1308692 at *5, 2014 U.S. Dist. LEXIS 42185 at **13–14 (S.D. Ohio March 28, 2014) (Graham, J).

**B. Form of Notice**

 Courts may facilitate notice to putative collective class members so long as the court avoids communicating to absent class members any encouragement to join the suit or any approval of the suit on the merits. *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 172, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)

Defendant objects to the content of Plaintiff's Notice (Doc. 2–1) for three reasons.[7] First, Defendant objects that the Notice defines the class as employees who were "not properly compensated." (Doc. 11 at 17). Defendant argues this language presumes, with no legal support, that the automatic deduction policy was a *per se* violation of the FLSA. (*Id.* at 18).

The Court disagrees. Defining the proposed class as employees who were "not properly compensated" does not imply that

---

7. Defendant does not object to Plaintiff's 45–day notice period. The Court finds this period

to be appropriate.

there has been a *per se* violation of the FLSA; it accurately identifies the group of individuals who may opt-in.

Further, the Notice does not encourage participation nor does it indicate approval of Plaintiff's claims. The Notice very clearly states that the lawsuit is in its "early stages," that the "right to recovery is not established and is not certain," and "[t]he Court has not yet decided who will win the lawsuit." (Doc. 2–1 at 1).

■ Second, Defendant objects to the fact that the Notice defines the class from September 19, 2013 to present (three years prior to the date the Complaint was filed). (Doc. 11 at 18). Defendant argues that the operative date should instead be calculated two years back from the date the Court grants the Motion for Conditional Certification. (*Id.*).

■ The Court agrees with the Plaintiff that the class should be defined by a three year statute of limitations. FLSA claims for unpaid compensation must be filed within two years after the cause of action accrues, unless there was a willful violation of the statute, in which case the statute of limitations is extended to three years. 29 U.S.C. § 255(a). To establish willfulness, a plaintiff is required to show that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute. *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 966–97 (6th Cir. 1991) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988)).

Here, Plaintiff submitted evidence that Defendant is aware its security officers do not receive uninterrupted meal periods (Doc. 2–2 at ¶ 18) and instructed its employees to not submit "no lunch" reports even when they had not received a full 30 minute lunch break in an effort to decrease overtime payments (Doc. 15–1 at ¶¶ 10–14). Given the lenient standard employed

at the conditional certification stage, and the Court's obligation to refrain from weighing Defendant's competing evidence at this juncture, the Court finds it appropriate to define the proposed class using a three year statute of limitations. *See Lemmon v. Harry & David Operations, Inc.*, No. 2:15–cv–779, 2016 WL 234854 at *5, 2016 U.S. Dist. LEXIS 11810 at *16 (S.D. Ohio Jan. 20, 2016) (Smith, J). The Court is also mindful that certification at this stage is "by no means final." *Id.* (citing *Comer*, 454 F.3d at 546).

However, the Court agrees with the Defendant that September 19, 2013—three years prior to the filing of the Complaint—should not be the operative date.

■ A cause of action under the FLSA accrues on the date that payment is owed. *Atkinson v. TeleTech Holdings, Inc.*, No. 3:–14–cv–253, 2015 WL 853234 at *7, 2015 U.S. Dist. LEXIS 23630 at *17 (S.D. Ohio Feb. 26, 2015) (Rice, J). In a collective action, a *named* plaintiff's claim is considered to be filed on the date the complaint is filed and he or she files a written consent to join the collective action. *Id.* However, if a party is not named in the complaint, the claim is not considered to be filed until he or she files notice of written consent to become a party plaintiff. *Id.* at *7, 2015 U.S. Dist. LEXIS 23630 at **17–18 (citing 29 U.S.C. § 256).

Accordingly, in an effort to tailor the defined class to individuals with viable claims, the operative date of potential class members shall be changed from September 19, 2013, to February 1, 2014.

Third, Defendant argues that the Notice (Doc. 2–1) does not accurately describe the effect of opting-in to the class and requests additional language to cure this supposed defect. (Doc. 11 at 18). Defendant's argument is not well-taken. The Notice sufficiently and accurately describes the effect of opting-in to the class in language nearly

identical to that suggested by Defendant. (Doc. 2–1 at ¶ VI).

### C. Distribution of Notice

Plaintiff requests permission to send the Notice (Doc. 2–1) two ways: (1) by ordinary mail (to current and former employees) and (2) by electronic mail to former employees only (to former employees only). (Doc. 2 at 15).

■■■ "Courts generally approve only a single method for notification unless there is a reason to believe that method is ineffective." *Wolfram v. PHH Corp.*, No. 1:12–cv–599, 2012 WL 6676778 at *1-2, 2012 U.S. Dist. LEXIS 181073 at *4 (S.D. Ohio Dec. 21, 2012). Within the Southern District of Ohio, several judges have found notification by U.S. mail to be sufficient for all current employees in FLSA collective actions, but ordered additional electronic mail notification for former employees in order to better ensure delivery. *See, e.g., Swigart*, 276 F.R.D. at 215; *Wolfram*, 2012 WL 6676778 at *1-2, 2012 U.S. Dist. LEXIS 181073 at *4; *Lutz v. Huntington Bancshares*, No. 2:12cv1091, 2013 WL 1703361 at *3, 2013 U.S. Dist. LEXIS 56477 at *7 (S.D. Ohio Apr. 19, 2013) (Frost, J.).

This Court chooses to follow *Swigart*, *Wolfram* and *Lutz* and allow sending notice by electronic mail to former SOMC security officers who are within the certified class. By allowing notice by electronic mail to former employees now, the Court hopes to avoid the added step of having to resend notice in the event that a former employee's last known home address proves to be inaccurate. *See Lutz*, 2013 WL 1703361 at *6-7, 2013 U.S. Dist. LEXIS 56477 at *19.

Finally, Plaintiff requests that the Court allow him to send a court authorized Reminder (Doc. 2–6) by electronic mail to the entire class, including current and former employees, halfway through the notice period. (Doc. 2 at 16). Defendant does not object to service of the Reminder, but objects to any notice by electronic mail to current employees. (Doc. 11 at 18).

The Court finds that the Reminder (Doc. 2–6) may be sent halfway through the notice period. However, Plaintiff has not demonstrated any reason why the Reminder should be afforded an additional method of service. Accordingly, Plaintiff is authorized to serve the Reminder through the same means it served the Notice: by first class mail to current employees and by first class mail and electronic mail to former employees.

### V. CONCLUSION

Accordingly, for these reasons, Plaintiff's motion for conditional class certification and notice (Doc. 2) is **GRANTED**. Specifically, the Court conditionally certifies the following class:

All current and former Security Officers employed by Southern Ohio Medical Center who, since February 1, 2014, worked more than forty hours in any workweek, but were not properly compensated for all of their overtime hours worked under the FLSA because of Southern Ohio Medical Center's automatic 30–minute meal deduction policy.

Within 14 days of this Order, Defendant shall identify all potential opt-in plaintiffs by providing to Plaintiff each person's full name, last known address, telephone number, dates of employment, and (for former employees only) all known email addresses.

Plaintiff's motion for leave to file an Amended Complaint (Doc. 14) is **GRANTED**. Such Amended Complaint shall be filed forthwith.

Plaintiff's motion for leave to file supplemental evidence in support of Motion for

Conditional Class Certification (Doc. 15) is **GRANTED**.

Defendant's Motion to Strike (Doc. 16) is **DENIED**.

Defendant's motion for leave to file a sur-reply (Doc. 17) is **GRANTED**.

**IT IS SO ORDERED.**